HOBSON, Acting Chief Judge.
This is a timely appeal by the plaintiff below from an order dismissing plaintiff’s amended complaint with prejudice. Plaintiff will hereinafter be referred to as “Employers.”
The record reveals that on or about July 1, 1962, a produce bond was issued by Employers upon the application of the Southern Produce Co., Inc., a Louisiana corporation, running in favor of the Commissioner of Agriculture of the State of Florida. The bond in question was to be in compliance with and under the provisions of § 604.15 through § 604.30 of the Florida Statutes, F.S.A.
Preliminary to the issuance of the 1962 bond, defendants J. C. Valenti and Anthony Diecidue entered into and executed an indemnity agreement contained in the application form for the surety bond.
The application form which was signed by the defendants herein contains the following language:
“In consideration of the Company executing the said bond, the undersigned, and each of the undersigned, joins in the aforegoing indemnity agreement hereby assuming full liability, both joint and several thereunder, and agrees to become bound both jointly and severally by all the covenants, provisions and conditions set forth therein; and if a corporation, admits it is financially interested in the performance of the obligation(s) which the said bond is given to secure, and asserts it is fully empowered to obligate itself hereby. And the undersigned and each of the undersigned, does further agree that all of the obligations herein undertaken by such undersigned shall also be jointly and severally binding upon the heirs, administrators, executors, successors and assigns of the undersigned and each of them.”
After the execution of the above, a bond in the sum of $20,000 was issued by Em- *358 pl-oyers to run for one year from the effective date of July 1, 1962.
Thereafter, on April 10, 1963, bond Number SY-404712-A was executed to become effective as of July 1, 1963, the date that the original bond expired. The second bond was also to remain in effect for a period of one year and was likewise in the same amount as the original bond. But the record fails to demonstrate that a separate application form containing the above described indemnity agreement was executed by the defendants pursuant to the issuance of the surety bond for the period of July 1, 1963 to July 1, 1964.
During the time in which the second bond was in force, but after the expiration of the original bond, orders were entered by the Commissioner of Agriculture under which plaintiff was directed to pay the aggregate sum of $11,146.90. Thereafter-, bottomed upon the language contained in the application form for the original surety bond, plaintiff asserted its demand upon defendants to reimburse it for the above sum. Defendants contended that while they were indemnitors of the original bond issued in 1962, they were not indemnitors for any new bonds issued subsequent to the expiration date of the original bond.
The pertinent language in the application form for the original bond which plaintiff alleges makes defendants liable for losses under the second bond is as follows:
“The undersigned does or do hereby represent that the statements made herein as an inducement to the Company, to execute the bond applied for herein, are true, and should the Company execute said bond, does or do hereby agree as follows: FIRST, to pay to the Company the premium charge of * * * in each and every year, as long as liability shall continue under said bond or any continuation or renewal thereof, or substitute therefor (said bond or any such continuation, renewal or substitute being hereinafter referred to as said bond), and until evidence satisfactory to the Company of the termination of such liability shall be furnished to it at its office in the City of Boston, Mass.; * * (Emphasis added.)
Plaintiff contends that once this application was executed by the defendants they became indemnitors under any surety bond issued by the plaintiff. We cannot agree. We hold that the defendants were not liable for the losses occurring under a nezv bond issued subsequent to the expiration of the original bond. See Seaboard Surety Co. v. Bachinger, 313 Mich. 174, 20 N.W.2d 854 (1945). While it is true that both bonds here in question were executed for the same amount, $20,000, under the applicable statute the amount required could vary from year to year and it is unreasonable to assume that defendants without some clear expression on their part would bind themselves in the future to be liable up to an unknown or undetermined maximum amount.
The language in the application form is not clear and concise and we believe that it would be an unreasonable and strained construction of the language therein to hold the defendants liable on all future bonds. This is particularly so in consideration of the applicable Florida Statutes where the amount of bond required depends upon the volume of business undertaken and therefore the defendants’ liability could vary from year to year.
Our conclusion is further strengthened by paragraph (f) of the “Information for the Preparation and Execution of this Bond” found on the back side of the printed bond form issued by the Department of Agriculture. Paragraph (f) reads as follows: “Continuation certificates are not acceptable. A new bond must be furnished to support License as Dealer in Agricultural Products for each separate license year.” (Emphasis added) Therefore the bond for 1963 cannot by this very language be a “renewal,” “continuation” or “substitute” of the 1962 bond. It was a new bond *359 and conceivably could have been for a greater amount.
Affirmed.
PIERCE, J., and DRIVER, B. J., Associate Judge, concur.