SEABOARD SURETY COMPANY *v.* BACHINGER.

1. CONTRACTS—CONSTRUCTION.
    The label given to an agreement is not controlling in constru-
    ing it.

2. SAME—PRINTED FORMS—OMNIBUS PROVISIONS.
    There is no vice in using a printed form nor in having omnibus
    conditions covering many contingencies in an agreement.

3. INDEMNITY—CONSTRUCTION OF CONTRACT.
    If the plain language of an indemnity agreement is such as to
    bind the indemnitors thereunder on future bonds for later
    years and for larger sums, the indemnitors would be liable
    thereunder notwithstanding the agreement was prepared on a
    printed form furnished by the indemnitee.

4. CONTRACTS—AMBIGUITY—CONSTRUCTION.
    In case of ambiguity, a contract must be strictly construed
    against the person who prepared it.

5. SAME—CONSTRUCTION.
    In construing a contract, all circumstances accompanying the
    transaction giving rise to it must be taken into consideration
    and that meaning given it which would be attached to it by a
    reasonably intelligent person, knowing all the circumstances
    prior to, and contemporaneous with, the making of the
    integration.

6. INDEMNITY—WHOLESALE DISTRIBUTOR'S SURETY—BONDS FOR SUB-
    SEQUENT YEARS—INCREASES IN AMOUNT.
    Under indemnity agreement, prepared by surety, whereby in-
    demnitors, owners of one of several gasoline filling stations
    operated by wholesale gasoline distributor but not otherwise
    associated with him and not related to him, agreed to indem-
    nify his surety on statutory bond filed with the secretary of
    State in a given sum for his license for the year 1941, indem-
    nitors were not liable to surety on its new surety bonds in an
    increased amount for subsequent years notwithstanding in-

    Standard of interpretation where there is integration, see 1 Re-
statement, Contracts, §§ 230, 235 (d).

clusion of provision authorizing surety to alter, change, modify, amend, or extend its bond or any renewal or other obligation in place or in lieu thereof (1 Comp. Laws 1929, § 3578, as amended by Act No. 192, Pub. Acts 1931, Act No. 166, Pub. Acts 1935, and Act No. 64, Pub. Acts 1941).

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted June 12, 1945. (Docket No. 8, Calendar No. 42,971.) Decided December 3, 1945.

Assumpsit by Seaboard Surety Company, a foreign corporation, against D. A. Bachinger, W. W. Sprague, Jennie A. Sprague and another on an indemnity agreement. On motion of defendants Sprague to dismiss. Motion granted. Plaintiff appeals. Affirmed.

*Alexander, McCaslin, Cholette & Buchanan,* for plaintiff.

*Allen & North,* for defendants Sprague.

BUTZEL, J. Section 3 of the gasoline tax law, 1 Comp. Laws 1929, § 3578, as amended by Act No. 192, Pub. Acts 1931, Act No. 166, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 3578, Stat. Ann. § 7.293),* provides that before one may engage in the business of distributing gasoline at wholesale, he must make written application and obtain a license from the secretary of State and also pay an annual license fee, and that every applicant for a license for the year 1936, and each year thereafter, shall also file with the secretary of State a surety bond running to the people of the State of Michigan in an amount to be fixed by the secretary of State,

---

* Also subsequently amended by Act No. 64, Pub. Acts 1941, as to provisions not involved in present suit (Comp. Laws Supp. 1945, § 3578, Stat. Ann. 1945 Cum. Supp. § 7.293).

but not less than $1,000 or more than $25,000; that the secretary of State may require that the distributor furnish such other and further bonds within the limits of the act as he shall deem necessary. Defendant D. A. Bachinger, an applicant for such a license for the year 1941, was obliged to file a surety bond for that year and also new surety bonds for the years 1942 and 1943. Bachinger filed a bond for the year 1941 in the sum of $6,500 with the Seaboard Surety Company (hereinafter referred to as Seaboard) as surety. In 1942, he filed a new bond dated January 1, 1942, in the sum of $8,000 and in 1943, another bond dated January 1, 1943, in the sum of $10,000. Seaboard signed each as surety. No claim whatsoever was made by the State for unpaid taxes, et cetera, under the 1941 bond. By stipulation filed in this court the attorneys for the respective parties agree that all three bonds except as to amounts were in similar form. Each bond contained the provision that upon 10 days' notice, the principal should file such other and further bonds as the secretary of State would deem necessary. The law provided that the secretary of State any year could demand additional bond or bonds for such year.

Seaboard's printed form, prepared by Seaboard and labeled "General Agreement of Indemnity," was executed on the 23d day of January, 1941, by defendants, W. W. Sprague and Jennie Sprague. It recites that Seaboard has executed or may hereafter execute "a bond or bonds" on behalf of D. A. Bachinger, copy or copies of which may be attached to the agreement. The Spragues are described as "indemnitors." It stated that they have a substantial, material and beneficial interest in the obtaining of the "bond or bonds;" that they agree in consideration of the premises and the sum of one dollar to pay the premiums, to be paid annually in advance,

in each and every year during which the Seaboard shall be and continue to be liable upon the "bond or bonds," until it has been discharged or released from liability; at all times to indemnify Seaboard and keep it indemnified against any losses or costs, et cetera, in consequence of Seaboard's having given and executed any "bond or bonds" in behalf of the principal, and to make good and repay to Seaboard all amounts which Seaboard shall pay or cause to be paid on account of the execution of such "bond or bonds." It is unnecessary to set forth some of the other provisions referring to collateral, et cetera, which are set forth in the printed form, but are not applicable here. There was no collateral.

A clause, however, on which Seaboard relies is as follows:

"The surety company may also alter, change, modify, amend, or extend the said bond or bonds, and any renewal or other obligation in place or in lieu thereof, and in any such case the indemnitors shall be liable to the surety company as fully and to the same extent on account of any such altered, changed, modified, amended, limited or extended bond or bonds or renewal or substitution thereof, whenever and as often as made, as though such bond or bonds is or are described at length herein."

The indemnitors also agreed to waive notice of all acts, facts or information coming to the knowledge of Seaboard in regard to the liabilities under the bond or bonds if executed. No new or additional agreement of indemnity was executed by defendants Sprague to protect Seaboard because of its liability under the 1942 and 1943 bonds, although Seaboard as surety for Bachinger executed new bonds for these years. Bachinger paid the gasoline taxes due from him for 1941 and no claim is made of any default in that year. In 1942, he became indebted to

the State in the sum of $726.97, and in the year 1943 for $2,778.48 for unpaid gasoline taxes, penalties and interest, in all aggregating $3,505.45. Seaboard settled the liability to the State for $3,410.91, and thereupon brought suit against D. A. Bachinger, the obligor on the bond, Guyette Nina Bachinger and the Spragues. Seaboard claims that defendants Sprague became liable under the indemnity agreement not only for sums Seaboard was obliged to pay for Bachinger's defaults if any in payment of gasoline taxes for the year 1941, but also for the two subsequent years of 1942 and 1943. Spragues contend that their liability under the so-called indemnity agreement only applied to the 1941 bond and did not extend to the 1942 and 1943 bonds, and that these were not renewals or extensions of the 1941 bond. This is the controlling question in the case. The judge held that defendants Sprague were not liable for any amounts that Seaboard paid. Seaboard appeals.

It stresses the claim that defendants Sprague gave a bond of indemnity, not one of suretyship or of guaranty, and that the law does not demand either notice or the same degree of strictness to the precise letter of the agreement in dealing with the indemnitors as it does with guarantors and sureties. We recognized the difference in *Moore* v. *Capitol National Bank of Lansing,* 274 Mich. 56. It is conceded that the label given to the agreement signed by the Spragues is not controlling, but it makes very little difference in the result in the instant suit whether the contract is one of indemnity as claimed by appellant or one of suretyship or guaranty. The contract was on a printed form such as was evidently used in general by Seaboard. It contains some provisions in regard to collateral, et cetera, that are not at all applicable. There was no collateral given.

There is no vice in using a printed form nor in having omnibus conditions covering many contingencies in an agreement. If the plain language of the agreement were such as to bind defendants Sprague on future bonds for later years and for larger sums, they would be liable. We believe, however, the contract is uncertain and ambiguous in its terms and of such a nature that defendants Sprague would not even suspect that it applied to future contracts or liabilities for future years and for larger amounts. As we asked at the oral argument, if Seaboard's position is sound, then indemnitors under a similar agreement might become liable for a comparatively small amount under an original bond and later be called upon to respond for a huge amount under new bonds given for obligor's liabilities arising and solely applicable to later years.

We believe that possibly there would be some merit in Seaboard's contention if limited to the year 1941, had the secretary of State demanded an additional bond for that particular year. The bond for the year 1942 is not an extension of the 1941 bond. It is a new bond in a different amount for a different liability that might arise in 1942, not in 1941. This is likewise true of the 1943 bond. In fact, plaintiff's present claim is based partly on the 1942 and partly on the 1943 bond. The bond was prepared by Seaboard and as counsel for appellant concede, in a case of ambiguity, the existence of which they deny, the contract must be strictly construed against the person who prepared it, in this instance, the surety company.

In construing the contract, all circumstances accompanying the transaction must be taken into consideration. It is to be given the meaning that would be attached to it by a reasonably intelligent person, knowing all the circumstances prior to and con-

temporaneous with the making of the integration. 1 Restatement, Contracts, §§ 230 and 235(d). In the stipulation hereinbefore referred to, the parties further agreed that at the time of the filing of the original bond in this case, the defendants Sprague were neither related to nor associated in business with the defendant Bachinger; that they were not partners in said business in any sense; that their contact with Bachinger arose from the fact that Bachinger had several gas stations, and he rented one of them from defendants Sprague. Would a person believe that in signing the so-called indemnity agreement of 1941, as worded, he was making himself liable on new surety bonds covering liabilities to the State for subsequent years and for larger sums, far in excess of the liability he assumed? The answer must be in the negative. We believe that an ordinarily intelligent person, knowing all the circumstances, would not believe from the language of the agreement such as signed by defendants Sprague that there was any liability created for amounts arising under new bonds given for later years and for larger amounts. If Seaboard intended to create such a liability, it could have expressed it in plain language. It did not do so. In view of our opinion, we need not discuss the claimed liability of defendant Jennie A. Sprague, a married woman.

Judgment for defendants Sprague affirmed, with costs to them.

STARR, C. J., and BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. NORTH, J., did not sit. The late Justice WIEST took no part in this decision.