HENDERSON v STATE FARM FIRE AND CASUALTY COMPANY

Docket No. 110822. Argued March 10, 1999 (Calendar No. 10). Decided
    July 8, 1999.

Daniel Henderson brought an action in the Macomb Circuit Court
    against Travis Twitchell and Dawn Mysierowicz for damages arising
    from injuries suffered while visiting the Twitchell home, where
    Mysierowicz was staying temporarily. State Farm Fire and Casualty
    Company defended Twitchell under a homeowner's policy, but
    declined to provide a defense for Mysierowicz on the basis that she
    was not an insured within the meaning of the policy. Henderson
    obtained a default judgment of $75,000 against Mysierowicz. In con-
    sideration of a promise by Henderson not to proceed against her
    personal assets, Mysierowicz assigned all rights, benefits, and
    claims she had against State Farm to Henderson. Henderson subse-
    quently filed a complaint, as Mysierowicz' assignee, against State
    Farm, alleging that it had breached its obligations when it did not
    defend and provide coverage to Mysierowicz under the Twitchell
    homeowner's policy, and that he was entitled to a judgment of
    $75,000 against State Farm. State Farm denied liability on the basis
    that Mysierowicz was not an "insured" as the term was defined in
    the insurance policy. The court, Mary A. Chrzanowski, J., granted
    summary disposition for State Farm, explaining that, although
    Mysierowicz resided with the Twitchell's, she was not in the care of
    the insureds. The Court of Appeals, MARKEY, P.J., and JANSEN and
    WHITE, JJ., reversed in an opinion per curiam, finding the phrase "in
    the care of" in the policy to be ambiguous and ordered summary
    disposition for the plaintiff. 225 Mich App 703 (1997) (Docket No.
    188579). State Farms appeals.

In an opinion by Justice TAYLOR, joined by Chief Justice WEAVER,
and Justices BRICKLEY, CORRIGAN, and YOUNG, the Supreme Court
*held*:

A question of fact clearly exists that can only be resolved by a
trier of fact. Neither party is entitled to judgment as a matter of law
under MCR 2.116(C)(10).

1. The phrase "in the care of" is not ambiguous. It is a colloquial
or idiomatic phrase that is peculiar to itself and readily understood
as a phrase by speakers and readers of American English. Use of

plain English in insurance policies and other legal instruments has been encouraged in recent years. When faced with plain English phrases in an insurance contract, any attempt to define each element or word of a phrase, as the Court of Appeals did, almost invariably will result in an inaccurate understanding of the phrase. The proper approach is to read the phrase as a whole, giving it its commonly used meaning. This requires a court to give contextual meaning to the phrase to determine what it conveys to those familiar with American English and its contemporary usage. The goal of the court in this endeavor is to construe the phrase so as to preserve the parties' agreement.

2. In this case, both the trial court and the Court of Appeals erred. The trial court should not have granted summary disposition for State Farm when there was deposition testimony suggesting that Mysierowicz was "in the care of" Mrs. Twitchell at the time in question. The Court of Appeals likewise erred in concluding as a matter of law that Mysierowicz was "in the care of" Mrs. Twitchell at the time of the incident, given the evidence suggesting that she was not. Viewing all the facts in the light most favorable to the plaintiff forecloses a ruling, as a matter of law, that Mysierowicz was not "in the care of" Mrs. Twitchell. Similarly, viewing all the facts in a light most favorable to State Farm forecloses a ruling as a matter of law that Mysierowicz was "in the care of" Mrs. Twitchell.

Reversed and remanded.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that the phrase "in the care of" is ambiguous, and the contract provision should be construed against the defendant, as its drafter. The plaintiff is entitled to judgment as a matter of law under MCR 2.116(C)(10) because there was no genuine issue of material fact. What the majority denominates an issue of fact is actually an issue of law that only a court should decide.

*Sarvis & Herrmann, P.C.* (by *J. Steven Sarvis*), for plaintiff-appellee.

*Draugelis & Ashton, L.L.P.* (by *Floyd C. Virant*), for defendant-appellant.

Amici Curiae:

*Charters, Heck, O'Donnell, Petrulis & Zorza, P.C.*
(by *Eric S. Goldstein*), for Michigan Trial Lawyers
Association.

*Dykema, Gossett, P.L.L.C.* (by *Lori M. Silsbury*),
for Insurance Information Association of Michigan.

TAYLOR, J. We granted leave to appeal in this case to
review the Court of Appeals first impression con-
struction of the phrase "in the care of" in a home-
owner's insurance policy. The Court of Appeals deter-
mined that the phrase was ambiguous and that there
was no genuine issue of material fact that Dawn
Mysierowicz, plaintiff's assignor, came within the def-
inition of an insured[1] under defendant's insurance pol-
icy because she was "in the care of" the named
insured. We find that the Court of Appeals erred in
reaching this holding. Because we conclude that
neither plaintiff nor defendant was entitled to sum-
mary disposition, we reverse and remand to the trial
court for further proceedings.

BACKGROUND FACTS AND PROCEEDINGS BELOW

In early 1993, Mysierowicz' mother was in the pro-
cess of divorcing her father and was unable to pro-
vide a home for her. Bonnie Twitchell, the mother of
Mysierowicz' boyfriend Travis Twitchell, agreed that
Mysierowicz could stay at the Twitchell home on a

---

[1] The insurance policy contained the following definition of the word
"insured":

4. "insured" means you and, if residents of your household: a.
your relatives; and b. any other person under the age of 21 who is
*in the care of* a person described above. [Emphasis added.]

temporary basis.[2] On June 19, 1993, plaintiff Daniel
Henderson was visiting the Twitchell household. An
altercation occurred with some strangers in front of
the Twitchell home during which plaintiff was
stabbed. Henderson subsequently filed a lawsuit alleg-
ing that Travis Twitchell and Mysierowicz had negli-
gently provoked the strangers, resulting in his being
injured.

The lawsuit was tendered to State Farm Fire and
Casualty Company. State Farm assumed a defense for
Travis Twitchell, but declined to provide a defense for
Mysierowicz on the basis that she was not an
"insured" within the meaning of the insurance policy.
Plaintiff obtained a default judgment for $75,000
against Mysierowicz. In consideration of a promise by
Henderson not to proceed against her personal
assets, Mysierowicz assigned all rights, benefits and
claims she had against State Farm to Henderson.

Henderson subsequently filed a complaint, as
Mysierowicz' assignee, against State Farm alleging
that it had breached its obligations when it did not
defend and provide coverage to Mysierowicz under
the Twitchell homeowner's policy. Plaintiff alleged
that he was entitled to a judgment of $75,000 against
defendant. State Farm filed an answer denying liabil-
ity on the basis that Mysierowicz was not an
"insured" as the term was defined in the insurance
policy.

After depositions of Mysierowicz and the Twitchells
were taken, plaintiff filed a motion for summary dis-
position under MCR 2.116(C)(9) (failure to state a

---

[2] Travis Twitchell was twenty years old and Mysierowicz was eighteen
years old.

valid defense) and MCR 2.116(C)(10) (no genuine issue of material fact). Plaintiff argued on the basis of deposition testimony that he filed with his motion that Mysierowicz fit within the definition of an "insured" in the insurance policy. Defendant responded by filing its own motion for summary disposition under MCR 2.116(C)(10). Defendant also cited and provided deposition testimony it said demonstrated that Mysierowicz was not an "insured" and that it had properly refused to defend or provide coverage in the earlier lawsuit.

The trial court denied plaintiff's motion and granted defendant's motion. The court explained:

> This Court finds that Dawn Mysierowicz was at the age of 18, [a] legal adult suffering from no physical or mental disabilities. She resided with the Twitchel[ls] and was not under the[ir] control, guidance, supervision, management or custody. As such it is clear to this Court that State Farm's policy of insurance did not provide coverage to her because she was not, "In the care of," the insureds. Thus, this Court finds no genuine issue as to any material fact.

Plaintiff filed a claim of appeal. After consulting dictionary definitions of the word "care" and some out-of-state cases, the Court of Appeals determined that "care" had many meanings and thus the phrase "in the care of" was ambiguous because it could also reasonably be understood to have different meanings. The Court ultimately reversed the order granting summary disposition for defendant and further found that there was no genuine issue of material fact that Mysierowicz came within the definition of "insured" because she was "in the care of" Bonnie Twitchell, the named insured under defendant's homeowner's policy. 225 Mich App 703; 572 NW2d 216 (1997). We

subsequently granted defendant's application for leave to appeal. 459 Mich 880 (1998).

STANDARD OF REVIEW

We review the grant or denial of a motion for summary disposition de novo. *Groncki v Detroit Edison Co*, 453 Mich 644, 649; 557 NW2d 289 (1996). Further, the construction and interpretation of an insurance contract is a question of law for a court to determine that this Court likewise reviews de novo. *Morley v Automobile Club of Michigan*, 458 Mich 459, 465; 581 NW2d 237 (1998). Whether contract language is ambiguous is also a question of law which we review de novo. *Port Huron Ed Ass'n* v *Port Huron Area School Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996). It is axiomatic that if a word or phrase is unambiguous and no reasonable person could differ with respect to application of the term or phrase to undisputed material facts, then the court should grant summary disposition to the proper party pursuant to MCR 2.116(C)(10). *Moll v Abbott Laboratories*, 444 Mich 1, 28, n 36; 506 NW2d 816 (1993). Conversely, if reasonable minds could disagree about the conclusions to be drawn from the facts, a question for the factfinder exists. *Id.*

PRINCIPLES UTILIZED IN INTERPRETING
INSURANCE CONTRACTS

Initially, in reviewing an insurance policy dispute we must look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract con-

struction. *Arco Industries Corp v American Motorists Ins Co*, 448 Mich 395, 402; 531 NW2d 168 (1995).

First, an insurance contract must be enforced in accordance with its terms. *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 207; 476 NW2d 392 (1991). A court must not hold an insurance company liable for a risk that it did not assume. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992). Second, a court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. *Id.* Thus, the terms of a contract must be enforced as written where there is no ambiguity. *Stine v Continental Casualty Co*, 419 Mich 89, 114; 349 NW2d 127 (1984).

While we construe the contract in favor of the insured if an ambiguity is found, *Auto Club Ins Ass'n v DeLaGarza*, 433 Mich 208, 214; 444 NW2d 803 (1989), this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefitting an insured. *Upjohn Co, supra* at 208, n 8. The fact that a policy does not define a relevant term does not render the policy ambiguous. *Auto Club Group Ins Co v Marzonie*, 447 Mich 624, 631; 527 NW2d 760 (1994). Rather, reviewing courts must interpret the terms of the contract in accordance with their commonly used meanings. *Group Ins Co of Michigan v Czopek*, 440 Mich 590, 596; 489 NW2d 444 (1992). Indeed, we do not ascribe ambiguity to words simply because dictionary publishers are obliged to define words differently to avoid possible plagiarism. *Upjohn Co, supra* at 209, n 8.

ANALYSIS

The Court of Appeals erred in concluding that the phrase "in the care of" was ambiguous. It is not.[3] The Court of Appeals failed to recognize that this phrase is a colloquial or idiomatic phrase that is peculiar to itself and readily understood as a phrase by speakers and readers of our language.[4]

An example of a court recognizing that parsing phrases word by word may lead to an inaccurate interpretation is informative. In *Nat'l Security Archive v United States Dep't of Defense*, 279 US App DC 308, 310; 880 F2d 1381 (1989), the United States Court of Appeals for the District of Columbia, in analyzing the phrase "educational institution," stated:

> It is often the case that words, used in conjunction, convey a meaning different from that which they would bear if interpreted separately.[5]

---

[3] We reject Justice KELLY's claim that the phrase is ambiguous because both parties attach materially different meanings to the phrase and advocate different applications of the phrase. The fact that each party is advocating a definition that supports its desired outcome in a case of first impression does not make a phrase ambiguous. If this were the test, all terms and phrases would be rendered ambiguous.

[4] The major flaw in the Court of Appeals approach, as will be discussed below, was failing to deal with the disputed phrase as a phrase.

Furthermore, even when one engages in a word-by-word analysis, such as the Court of Appeals did here, the mere fact that various dictionaries define the word "care" differently does not make the word "care" ambiguous. To so hold would make virtually any word ambiguous, thus derailing proper interpretation where word by word explication is called for. See our discussion of the proper understanding of the word "of" in *Horace v City of Pontiac*, 456 Mich 744, 755-756; 575 NW2d 762 (1998).

[5] To nail down the point, the court wryly gave the phrase "monkey business" as an example of a phrase that had a different meaning than the sum of its constituent parts. *Id.* at 310-311, n 4.

Utilization of plain English in insurance policies and other legal instruments has been on occasion required, but in all cases encouraged, in recent years.[6] This change requires courts to utilize less rigid methods of interpretation than the old densely written policies demand.[7] With this in mind, when faced with plain English phrases in an insurance contract, any attempt to define each element, or word, of the phrase, as the Court of Appeals did, will almost invariably result in an inaccurate understanding of the phrase. Rather, the proper approach is to read the phrase as a whole, giving the phrase its commonly used meaning. *Group Ins Co v Czopek, supra* at 596. This requires a court to give contextual meaning to the phrase to determine what the phrase conveys to those familiar with our language and its contemporary usage. This approach is consistent with the parallel rule for statutory construction, which requires that all nontechnical words and phrases be defined according to the common and approved usage of the language. MCL 8.3a; MSA 2.212(1). Thus, when the meaning of a colloquial phrase is in dispute, the court

---

[6] The Legislature since 1990 has required basic insurance policies to be written in plain English. MCL 500.2236;    MSA 24.12236. The legal profession has also taken a strong interest in having documents written in plain English. For example, the Michigan Bar Journal regularly publishes articles encouraging, and even giving awards regarding, the use of plain English in contracts, pleadings, and the like. Indeed, the Plain English Committee even has its own Web site. See www.michbar.org/committees/penglish/pengcom.html.

[7] As stated in 2 Couch, Insurance, 3d, § 21:5, p 21-9:

The trend in the insurance industry is toward drafting policies using "plain English." As a result, many of the words and phrases that have created difficulty in interpretation and have required judicial intervention have been deleted or redefined, leaving the courts with new words and phrases to interpret.

must not mechanistically parse the meaning of each word in the phrase; instead, it must look to the contextual understanding and consider the phrase as a whole.

The tools available to a court in seeking to establish the meaning of such phrases include common understandings of which the court can take notice, as well as other sources such as specialized dictionaries[8] or publications.[9] Furthermore, it must not be forgotten that the goal of the court in this endeavor is to construe the phrase so as to preserve the parties' agreement.

While the meaning of the phrase "in the care of" is not ambiguous,[10] this is not to say that application of the phrase to a given set of facts will always be easy. This is the case here. While the facts are not in dispute here, reasonable persons could disagree about the conclusions to which they lead. Said another way, individual factfinders could reasonably give different weight to the same facts, causing them to reach opposite conclusions regarding whether Mysierowicz was "in the care of" Mrs. Twitchell at the time of the stab-

---

[8] For example, a glossary of idiomatic expressions could in a given case help one understand such sports metaphors as: (1) a "hail Mary pass," (2) a "hat trick," (3) "down for the count," or (4) even the venerable "home run."

[9] For example, if a legal phrase of art such as "equitable remedies" is found in a contract, the phrase would be interpreted in accord with common-law understandings and case-law explanations that those familiar with such terms of art are held to understand.

[10] See, e.g., *Horace Mann Ins v Stark*, 987 F Supp 562, 567 (WD Mich, 1997) (a "term is not rendered ambiguous merely because its meaning may vary according to the circumstances"); *Gredig v Tennessee Farmers Mut Ins Co*, 891 SW2d 909, 914 (Tenn App, 1994) ("the fact that words may be difficult to apply to a given factual situation does not make those words ambiguous").

bing. Thus, it was improper to grant summary disposition to either party in this case.

THE GENERAL MEANING OF THE PHRASE

Given that the contract does not define the phrase "in the care of," and because interpretation of an insurance contract is a question of law, it falls to us to provide some guidance regarding the meaning of the phrase. In our view, the following nonexclusive common-sense factors are relevant for the factfinder to consider in answering when someone is "in the care of" someone else:

(1) is there a legal responsibility to care for the person;

(2) is there some form of dependency;

(3) is there a supervisory or disciplinary responsibility;

(4) is the person providing the care providing substantial essential financial support;

(5) is the living arrangement temporary or permanent, including how long it has been in existence and is expected to continue;

(6) what is the age of the person alleged to be "in the care of" another (generally, the younger a person the more likely they are to be "in the care" of another);

(7) what is the physical or mental health status of the person alleged to be "in the care of" another (a person with health problems is more likely to be "in the care" of another); and

(8) is the person allegedly "in the care of" another gainfully employed (a person so employed is less likely to be truly dependent on another)?

FACTS OF RECORD SUGGESTING MYSIEROWICZ WAS "IN THE
CARE" OF BONNIE TWITCHELL

The Court of Appeals relied on deposition testimony establishing the following in concluding there was no genuine issue of material fact that Mysierowicz was "in the care of" Bonnie Twitchell: (1) Mysierowicz paid no rent and contributed nothing in terms of the monthly mortgage payments, property taxes and utilities; (2) Mrs. Twitchell performed all household chores including meals when she was home; (3) Travis hoped that everyone regarded Mysierowicz as a member of the family and considered the three of them to be living as one family unit;[11] (4) Mrs. Twitchell had assumed responsibility for Mysierowicz' well-being;[12] (5) Mysierowicz was primarily dependent on Mrs. Twitchell for food and shelter;[13] and (6) Mrs. Twitchell provided virtually total[14] financial support for Mysierowicz.

FACTS OF RECORD SUGGESTING MYSIEROWICZ WAS NOT
"IN THE CARE" OF BONNIE TWITCHELL

The Court of Appeals reached its conclusion that there was no genuine issue of material fact that Mysierowicz was "in the care of" Mrs. Twitchell, while acknowledging: (1) Mysierowicz was eighteen years old; (2) the living arrangement was temporary;

---

[11] Contrary to the dissent, Travis Twitchell's subjective hope is not evidence that Mysierowicz was "in the care of" Mrs. Twitchell.

[12] However, Mrs. Twitchell denied being responsible for Mysierowicz "in any way."

[13] Mysierowicz testified that she was not capable of completely supporting herself without assistance.

[14] However, Mysierowicz was working full-time and paid the majority of her own living expenses. Hence, the record does not corroborate the dissent's reference to this unsupported assertion.

(3) Mysierowicz was responsible for purchasing all her personal items, including toiletries and clothing and maintaining the car her parents had purchased for her; (4) Mysierowicz had a telephone in her own name in the Twitchell house; (5) Mysierowicz agreed to contribute $20 a week toward an average weekly grocery bill of $50; (6) neither Bonnie nor Travis Twitchell exercised any control over Mysierowicz' activities; (7) Mrs. Twitchell did not sign an agreement to take care of Mysierowicz nor did she consider herself responsible for Mysierowicz; and (8) Mysierowicz was free to come and go as she pleased, while providing for some of her own support.

Those factors cited by the Court of Appeals in support of its ruling, which are supported by the record, would allow a reasonable factfinder to conclude that Mysierowicz was "in the care of" Mrs. Twitchell at the time Henderson was stabbed. However, the eight other factors cited immediately above would similarly allow a reasonable factfinder to conclude that Mysierowicz was not "in the care of" Mrs. Twitchell at the time of the stabbing.[15]

In our judgment, both the trial court and the Court of Appeals erred. The trial court should not have granted summary disposition to defendant because there was deposition testimony from which a reasonable person could conclude that Mysierowicz was "in the care of" Mrs. Twitchell at the time of the stabbing. The Court of Appeals likewise erred in concluding as a matter of law that Mysierowicz was "in the care of"

---

[15] It is axiomatic that the trial court must give the benefit of all reasonable doubt to the nonmoving party when considering the motion. *SSC Associates Ltd Partnership v Detroit General Retirement System*, 192 Mich App 360, 364; 480 NW2d 275 (1991).

Mrs. Twitchell at the time of the incident, because there was evidence from which a reasonable person could conclude that she was not.[16]

CONCLUSION

Each side cited deposition testimony supporting its position. Viewing all the facts in the light most favorable to plaintiff forecloses a ruling, as a matter of law, that Mysierowicz was not "in the care of" Mrs. Twitchell. Similarly, viewing all the facts in a light most favorable to defendant forecloses a ruling as a matter of law that Mysierowicz was "in the care of" Mrs. Twitchell. We are satisfied that a question of fact clearly exists in this case that can only be resolved by a trier of fact. Neither party is entitled to judgment as a matter of law under MCR 2.116(C)(10).

Reversed and remanded for further proceedings.

WEAVER, C.J., and BRICKLEY, CORRIGAN, and YOUNG, JJ., concurred with TAYLOR, J.

KELLY, J. I respectfully dissent from the majority's holding that the phrase "in the care of" is unambiguous. I dissent, also, from the remand for a jury determination of whether Dawn Mysierowicz was "in the care of" Mrs. Twitchell.

I would hold that the phrase is ambiguous, and as such, the contract provision should be construed against the defendant, as its drafter. Plaintiff is entitled to judgment as a matter of law under MCR 2.116(C)(10) because there was no genuine issue of

---

[16] None of the out-of-state cases cited by the dissent persuade us that plaintiff is entitled to judgment as a matter of law.

material fact, given this Court's de novo standard of review.

We review both the grant or denial of a motion for summary disposition and the interpretation of an insurance contract de novo. *Groncki v Detroit Edison Co*, 453 Mich 644, 649; 557 NW2d 289 (1996); *Morley v Automobile Club of Michigan*, 458 Mich 459, 465; 581 NW2d 237 (1998). Under Michigan law, general contract rules are followed when construing insurance contracts. *Auto-Owners Ins Co v Harrington*, 455 Mich 377; 565 NW2d 839 (1997). Whether the language is ambiguous is a question of law, which is likewise reviewed de novo. *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996). In construing insurance contracts, any ambiguities are strictly construed against the insurer, to maximize coverage. *American Bumper & Mfg Co v Hartford Fire Ins Co*, 452 Mich 440; 550 NW2d 475 (1996).

Concomitant to the rules of construction is the rule of reasonable expectation. It states that a court examines whether a policyholder was led to a reasonable expectation of coverage for the loss in question upon reading the contract. *Vanguard Ins Co v Clarke*, 438 Mich 463, 472; 475 NW2d 48 (1991). If so, coverage will be afforded. *Fire Ins Exchange v Diehl*, 450 Mich 678, 687; 545 NW2d 602 (1996).

In this case of first impression, the majority concludes that the phrase "in the care of" is unambiguous. The phrase is ambiguous, not because various dictionaries define the word "care" differently, but because both parties attached materially different meanings to the phrase. See *Allstate Ins Co v Fick*, 226 Mich App 197; 572 NW2d 265 (1997). See also

*Seaboard Surety Co v Bachinger*, 313 Mich 174; 20 NW2d 854 (1945). I disagree with the majority's statement in footnote 3. *Ante* at 355. In this case, the parties advocate completely distinct constructions of the phrase, "in the care of." It is not a matter of ambiguity being asserted on the sole basis that each party offers a different definition for the purpose of supporting his desired outcome. If ambiguity could be grounded alone on differing definitions, then, as the majority suggests, any term would be ambiguous. What distinguishes this case is that, here, each party's construction is equally plausible. When the language of a contract is subject to two or more reasonable interpretations, then the contract is ambiguous. *Petovello v Murray*, 139 Mich App 639; 362 NW2d 857 (1984).

The words in an insurance policy are generally considered to be ambiguous when they may be reasonably understood in different ways. *Fick, supra* at 203. The defendant advocates a narrow construction, that is, the phrase should be construed to mean "legal care," such as a nurse would render to a patient. The plaintiff construes the phrase much more broadly and would not limit its definition to such a narrow construction.

The majority states that "in the care of" was misinterpreted by the Court of Appeals because it was parsed, rather than being treated as an idiom or colloquialism. "In the care of" is not a colloquial or idiomatic phrase. It cannot be analogized to a phrase like "monkey business." There is only one noun used in the expression "in the care of," whereas, in "monkey business," two nouns used together obliterate the meaning of each and form a whole new meaning.

When interpreting "in the care of," the proper focus is on the parties' intent. This is reviewed on an objective basis. See *Allstate Ins Co v Keillor (After Remand)*, 450 Mich 412, 417; 537 NW2d 589 (1995). Materiality connotes objective reasonableness. See *Rowe v Montgomery Ward & Co, Inc*, 437 Mich 627; 473 NW2d 268 (1991). The cardinal rule in interpreting contracts is to effectuate the intent of the parties. *Terry Barr Sales Agency, Inc v All-Lock Co, Inc*, 96 F3d 174 (CA 6, 1996); *Rasheed v Chrysler Corp*, 445 Mich 109; 517 NW2d 19 (1994). Therefore, a reviewing court must necessarily examine the intent of the parties and the meanings attached by each on an objective basis when construing a contract term.

I agree, as the majority recites, that a term is not rendered ambiguous merely because its meaning varies with changed circumstances. Also, a term is not ambiguous because it is difficult to apply to certain factual situations. However, in either instance, the likelihood of ambiguity is greatly enhanced.

A fair reading of some insurance policy language leads one to understand that there is coverage under a particular set of circumstances. Another fair reading of the same language may lead another to understand that there is no coverage. Under those circumstances, the contract is ambiguous and should be construed against the drafter in favor of coverage. *Michigan Mut Ins Co v Dowell*, 204 Mich App 81; 514 NW2d 185 (1994), lv den 447 Mich 971 (1994).

In this case, defendant reads "in the care of" to connote only support, supervision, charge, custody, and responsibility. Courts in other jurisdictions have interpreted the phrase "in the care of" as used in homeowners' insurance policies more broadly. Both

plaintiff and defendant here have relied on *State Farm Fire & Casualty Co v Odom*,[1] a case involving a State Farm policy containing language almost identical to the instant policy.[2]

In *Odom*, the Sixth Circuit Court of Appeals found that a child, who lived with her mother in the named insured's house, but was unrelated to the insured, was "in the care of" the insured. The court relied on the fact that the insured provided the child with significant physical care, giving her housing, clothing, and food, and sharing in her care. *Id.* at 250.

While the insured was looking after her, the child was fatally injured. The mother sued the insured for wrongful death. The Sixth Circuit agreed with State Farm that (1) the child was an "insured" under the policy because she was "in the care of" the named insured, and (2) the policy excluded liability coverage for injuries suffered by an insured. Accordingly, State Farm was not obligated under the policy to provide coverage or defense arising out of the insured's alleged liability for the child's injuries and death. *Id.* at 249-250.

Notably, in *Odom*, State Farm sought to have the child deemed an "insured" under the policy because such a finding precluded coverage. In this case, State Farm seeks to prevent this Court from finding that Dawn Mysierowicz is an insured under Bonnie Twitchell's policy.

---

[1] 799 F2d 247 (CA 6, 1986).

[2] In *Odom*, *supra* at 249, the insurance contract defined the term "insured" as "you and the following residents of your household: a. your relatives; b. any other person under the age of 21 who is in the care of any person named above."

The irony apparent here was commented on by contracts scholar, Allan Farnsworth: "[S]ometimes the drafter may have foreseen the [ambiguity] but deliberately refrained from raising it—the lawyer who 'wakes these sleeping dogs' by insisting that it be resolved may cost the client the bargain." 2 Farnsworth, Contracts, § 7.8, p 243.

Also persuasive is the Louisiana Court of Appeals decision in *United States Fidelity & Guaranty Co v Richardson*, 486 So 2d 929, 930-931 (La App, 1986). There, the question whether the fourteen-year-old daughter of the insured's girlfriend living in the insured's home was "in the care of" the insured for purposes of coverage under the insured's homeowner's policy. The policy defined as insureds "residents of the named insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any insured." *Id.* at 931.

The court found that all three individuals lived together in the insured's house under an unwritten agreement for sharing expenses. The insured paid the mortgage, bought his food, and took care of his vehicle. The insured's girlfriend paid for utilities, telephone bills, her car, purchased food for her and her daughter, and occasionally contributed to the mortgage payment. *Id.* at 930-931. In concluding that the fourteen-year-old was "in the care of" the insured and was, therefore, an "insured" under the policy, the court observed:

> It is clear that on the basis of the agreement between the parties, the payments made by James Richardson [the insured] did directly benefit Demetric Ayio. He was caring for the child by letting her stay in his home and by paying

> for both the maintenance of the home and his other agreed-upon expenses. Further, the bills and other expenses paid by James Richardson allowed Evelyn to devote more of her own income to Demetric's needs. Even though he did not consider himself as having guardianship of Demetric, James was much more than a nameless, unseen benefactor. We conclude, therefore, that the trial court was correct in its finding that the child was "in the care of" James Richardson under the policy. [*Id.* at 931.]

Thus, the insured's homeowner's insurance company was required to provide insurance coverage for the girl and her mother when the girl injured her classmate. *Id.*

Similarly, in *Nationwide Mut Ins Co v Anderson*,[3] a woman and her eighteen-year-old son lived with the named insured in his home. The son was sued for wrongful death when a shotgun he held discharged and killed Kevin Anderson. Subsequently, the plaintiff, who had issued a homeowner's policy to the insured, sought a declaratory judgment to determine whether the son was an insured under the policy. *Id.* at 92. The policy defined "insured" as follows:

> "insured" means you and residents of your household who are:
> a. your relatives; or
> b. other persons under the age of 21 and in the care of any person named above. [*Id.* at 93.]

The lower court granted summary judgment for the plaintiff. *Id.* The North Carolina Court of Appeals found that the son was an insured under the policy. The named insured, the mother, and the son had acted as a family for many years, the son even refer-

---

[3] 118 NC App 92; 453 SE2d 542 (1995).

ring to the insured as his stepfather. *Id.* at 95. The son, although eighteen when the incident occurred, remained dependent on the insured and his mother for the basic necessities of life, including food, clothing, and shelter. *Id.* at 94-95. Also, it was irrelevant that the son provided for his own support to some degree. The policy language did not contain a distinction based on whether the person "in the care of" the insured could support himself. *Id.*

Giving the phrase "in the care of" a nonstrained, nontechnical reading, and in light of the reasoning in cases that construed nearly identical provisions, I find that Dawn Mysierowicz was "in the care of" defendant's insured, Bonnie Twitchell. Therefore, she was an "insured" under defendant's homeowner's policy.

In accordance with established precedent, I would construe the phrase against defendant and in favor of plaintiff, as Mysierowicz' assignee. *State Farm Mut Automobile Ins Co v Enterprise Leasing Co*, 452 Mich 25; 549 NW2d 345 (1996). The phrase "under the care of" has been interpreted to mean "guidance, supervision, control, management or custody of another." *Bruno v Hartford Accident & Indemnity Co*, 337 So 2d 241 (La App, 1976). However, *Odom*, *Richardson*, and *Anderson* support plaintiff's claim that the phrase is subject to broader meanings that include the provision of support to another.[4]

---

[4] The Sixth Circuit Court of Appeals in *Odom*, *supra* at 250, found that "in the care of" was unambiguous in the context of that case. However, it said that the phrase does not mean only "legal care" as opposed to "legal and physical care," where the named insured furnishes housing, clothing, food, and security for a household resident. In so concluding, *Odom* indicates that the phrase "in the care of" would be ambiguous if the question were whether the phrase meant "legal care" versus "physical care." *Id.*

The majority opinion correctly states the applicable construction guidelines and this Court's standard of review. However, it ignores its proper role in construing the phrase in question and erroneously delegates that responsibility to the jury.[5] It lists eight "nonexclusive common-sense factors"[6] for which it provides no authority.[7] It then lists the undisputed facts and orders the jury to arrive at a legal conclusion.

It is undisputed that Bonnie Twitchell permitted Mysierowicz to stay in her home without requiring Mysierowicz to pay for either the maintenance of the home or substantial household expenses. Bonnie Twitchell, not Mysierowicz' mother, provided for Mysierowicz during the approximately six months

---

[5] Assuming that the majority correctly concluded that the phrase was unambiguous, its construction and legal conclusion from uncontested facts was a question of law for the court to decide. *Vigil v Badger Mut Ins Co*, 363 Mich 380; 109 NW2d 793 (1961); *State Farm Fire & Casualty Co v Couvier*, 227 Mich App 271; 575 NW2d 331 (1998). See also *Moll v Abbott Laboratories*, 444 Mich 1, 27-28; 506 NW2d 816 (1993).

> [A] court . . . does not have to remain idle in the presence of undisputed, uncontroverted facts. In this situation, the only question remaining is what legal conclusion can be drawn from the facts. This question is to be decided as a matter of law by the trial judge.

[6] *Ante* at 358.

[7] The majority states that the "contract does not define the phrase 'in the care of.'" *Id.* It also concludes that the phrase is unambiguous. *Id.* at 355. Despite these assertions, the majority, in effect, provides the jury with a list of possible definitions from which to choose. In essence, it permits the jury to choose a meaning or interpretation without regard to the intent of either party. Basic contract law requires courts to honor the intent of the parties. *Rasheed v Chrysler Corp, supra.* Furthermore, the majority compiles extrinsic factors to help the jury in construing the contract. Courts cannot supply material provisions that are absent from a clear and unambiguous writing. *Purlo Corp v 3925 Woodward Ave*, 341 Mich 483; 67 NW2d 684 (1955); *Hy King Associates, Inc v Versatech Mfg Industries, Inc*, 826 F Supp 231 (ED Mich, 1993). If the majority were correct in concluding that the phrase is unambiguous, then there would be no need for a jury to deal with it.

that Mysierowicz spent in the Twitchell home. As in *Richardson, supra,* Bonnie Twitchell took care of nearly all household expenses, enabling Mysierowicz to spend more of her income on herself. Moreover, unlike a "nameless benefactor," Bonnie Twitchell provided Dawn Mysierowicz with food, shelter, and supplies without exercising control over her. Arguably, however, by doing so, she assumed responsibility for Mysierowicz' well-being in a larger measure.

As in *Anderson,* Mysierowicz provided her own support by purchasing her own clothing and personal articles and maintaining her vehicle.[8] However, as in *Anderson, supra,* she was primarily dependent upon Bonnie Twitchell to provide her with food and shelter.[9] Mysierowicz moved from her mother's home to Bonnie Twitchell's home and remained with the Twitchells when they moved into a hotel after their house was damaged by fire. She then returned to her mother's home when she left the Twitchells. She never lived by herself during this period. While residing in the Twitchell home, Mysierowicz was considered a member of the family, as in *Odom, supra.* Although not dispositive, this fact provides further support for the conclusion that she was "in the care of" Bonnie Twitchell.

Finally, as in *Anderson, supra,* Mysierowicz' age did not preclude her from being dependent on Bonnie

---

[8] Travis Twitchell, son of Bonnie Twitchell testified that he maintained Dawn's car by performing oil changes, tune-ups, and other activities.

[9] While ordinary house guests are arguably provided with food and shelter, Dawn was different in that she was not free to return to another home. Bonnie Twitchell's home was the only one Dawn had during the period in question.

Twitchell for the basic necessities, even though she provided some of her own support.

By construing the phrase "in the care of" in favor of coverage and applying the law to the essentially uncontested material facts, I find that Dawn Mysierowicz came within the definition of an "insured" because she was "in the care of" Bonnie Twitchell, the named insured under defendant's homeowner's policy.

In conclusion, what the majority denominates an issue of fact is actually an issue of law that only a court should decide. Given that no genuine issue of material fact exists and given our rules of contract construction, plaintiff was entitled to judgment as a matter of law under MCR 2.116(C)(10). Therefore, I would affirm the judgment of the Court of Appeals.

CAVANAGH, J., concurred with KELLY, J.