GRIFFIN, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s holding that the policy language “closing for business” is ambiguous. This provision does not invite conflicting interpretations under the policy, nor is its meaning unfamiliar or uncommon in its contemporary usage. I also conclude that the policy does not provide coverage for the loss because defendant breached a warranty that was material to the risk assumed by plaintiff Assurance Company of America.
Pursuant to Michigan law, “the proper approach is to read the phrase as a whole, giving the phrase its commonly used meaning.” Henderson v. State Farm Fire & Cas. Co., 460 Mich. 348, 596 N.W.2d 190, 195 (1999). “This approach is consistent with the parallel rule for statutory construction, which requires that all nontechnical words and phrases be defined according to the common and approved usage of the language.” Id. “Insurance contracts and any coverage exclusions found therein are generally construed in favor of the insured, but only as a last resort; any ambiguous terms are given their plain and commonly understood meanings as much as possible, and an insurer cannot be held liable for risks it did not contract to assume.” Farm Bureau Gen. Ins. Co. of Mich. v. Duncan, Nos. 2777531 & 277662, 2008 WL 3540203, at *1 (Mich.Ct.App. Aug.14, 2008) (citing Klapp v. United Ins. Group Agency Inc., 468 Mich. 459, 663 N.W.2d 447, 454-55 (2003)).
The majority concludes that the phrase “closing for business” is ambiguous because it invites conflicting interpretations, to wit, that “two people were required on the premises at the time of the loss, and that two people were not required on the premises at the time of the loss because business hours were over and the store was locked.” I disagree.
Section E.2.b.(3) appears under the “Protective Safeguards” section of the policy. That section requires that the insured take certain safety precautions at different times of the business day. Specifically, it mandates that at least two agents be on the insured’s premises “at all times during business hours and when opening/closing for business.” Therefore, whether employees are readying the store for customers in the morning, putting away jewelry in the evening, or conducting customer sales, two agents must be in the store. *438 Different provisions of the policy apply, however, when the store is “closed for business,” and they require that its alarm system be operational and all insured property be secured in locked safes or vaults.
Defendant Lavdas Jewelry, Ltd. argues on appeal that its coverage was not barred by operation of E.2.b.(3) because the store was not “closing for business,” but was “closed for business.” However, defendant’s proposal for insurance belies this argument because defendant expressly warranted that when its store was “closed for business,” 100 percent of its insured property was “kept in locked safes.” As the majority correctly notes, each answer submitted by defendant in its proposal for insurance coverage “constitute[d] a warranty” because “[t]he pricing of the policy is based on the statements in [the insured’s] proposal.”[1]
In Usher v. St. Paul Fire & Marine Ins. Co., 126 Mich.App. 443, 337 N.W.2d 351 (1983),[2] the Michigan Court of Appeals construed an identical warranty provision contained in a jeweler’s block policy:
By the plain language of the policy and the incorporated application, plaintiff warranted that 100 percent of the stock would be kept in locked safes when the business was closed. In Lehr v. Professional Underwriters, 296 Mich. 693, 296 N.W. 843 (1941) quoted by Scanlon v. Western Fire Ins. Co., 4 Mich.App. 234, 144 N.W.2d 677 (1966), the Supreme Court held that “[an] insurance company may limit the risks it assumes and fix its premiums accordingly. The liability was limited in the policy. To hold otherwise would be to write a new contract for the parties.” Defendant insurer assumed the risk only for plaintiffs stock which was kept in locked safes when the business was closed. It is undisputed that the only jewelry taken during the burglary was that contained in display cases outside of the safes. The breach of the warranty was material to the risk assumed by defendant. The lower court properly granted summary judgment in favor of defendant on this ground....
Id. at 352.
In the present case, the policy instructs defendant that “when [it] [is] closed for business,” the “minimum percentage by value of property kept in locked safes or vaults ... is 99%” and the “minimum percentage of value of property kept in other locked safes or vaults ... is 1%.” Thus, defendant expressly warranted that when it was “closed for business,” 100 percent of the insured property would be kept in locked safes or vaults. It is uncontested by the parties that the insured property was stolen from an unlocked safe in Mr. Lavdas’s office. Thus, even if the store was “closed for business” as defendant contends, and assuming arguendo that its alarm system was fully operational, the policy still precludes coverage for defendant’s loss.[3]
*439 I agree with the majority opinion insofar as it concludes that the policy does not specify whether more than one agent is required on the premises when the store is “closed for business,” i.e., when business hours are over and the store is locked. However, this omission, standing alone, does not render the policy’s terms ambiguous. The policy’s requirement that all insured jewelry must be contained in locked safes when the store is closed would render the policy’s security provision requiring the presence of two agents unnecessary. In short, there is a decreased risk of loss when the insured property is under lock and key. Moreover, a contrary interpretation, such as the one advanced by defendant, would hold plaintiff liable for risks that it did not contract to assume.
Defendant contends that an interpretation of the policy that requires the presence of two agents in the store at all times to maintain coverage would produce an absurd result. However, jeweler’s block insurance differs from most other traditional forms of property insurance. See 11 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 154:67 (3d ed.2008). Under a typical property insurance contract, called a “named peril” policy, an insurer agrees to indemnify its insured for losses resulting from certain risks of loss or damage which are specifically enumerated within the provisions of the policy. Id. In contrast, under a jeweler’s block policy, which is an “all-risks” policy, any loss or damage to jewelry can be insured, subject to certain exceptions. Id. Thus, requiring the presence of two agents as a security precaution when, for example, one million dollars worth of loose diamonds is kept in an open safe, does not yield an absurd result in light of the “all-risks” coverage provided by plaintiff. Id.
Next, although Michigan courts have yet to interpret the phrase “closing for business,” a lack of precedent on this point does not remove this phrase from its contemporary usage. The phrase “closing for business” implies an active process, namely, the tasks performed by employees after normal business hours are over but before the store is vacated for the evening. Defendant’s manager, Cynthia Lowe, testified that defendant had a set procedure for closing the store, which involved, among other things, placing the jewelry in the safes, locking the safes, “double-checking everything,” makfing] sure that everything was locked,” setting the alarms, and “all walking] out together.” Defendant’s owner also testified that he was “closing the store” at the time of the robbery.
Title 12, Section 568.3 of the Code of Federal Regulations was promulgated pursuant to the Bank Protection Act of 1968, 12 U.S.C. § 1881-84 (1988). The Bank Protection Act requires the Office of Thrift Supervision (a branch of the Department of the Treasury) to establish minimum safety standards for banks and savings and loan institutions. Specifically, it “requires each savings association to adopt appropriate security procedures to discourage robberies, burglaries, and larcenies and to assist in the identification and prosecution of persons who commit such acts.” 12 C.F.R. § 568.1(a). Section 568.3 requires, among other things, that each bank “[establish procedures for opening and dosing for business and for the safekeeping of all currency, negotiable securities, and similar valuables at all times.” Id. (emphasis added).
Although the BPA does not define “opening and closing for business,” its use of that phrase alongside the word “safekeeping” demonstrates the federal government’s acknowledgment of the particular vulnerability of banks during this time period. The BPA thus provides persuasive *440 authority that businesses dealing in valuables should be taking the necessary precautions to safeguard such property when they are “opening and closing for business.” Because Mr. Lavdas was alone and still “in the process of closing” the store when the loss occurred, defendant did not take the required precautions to secure its jewelry from loss, and its coverage is therefore barred under section E.2.b.(3) of the policy.
For these reasons, I would affirm the judgment of the district court.

.“In addition to explicit coverage provisions and exclusions ... [jeweler’s block] policies are usually issued based upon the insured's warranties or representations concerning the location of all or a percentage of the insured property in a safe or vault, or to the percentage or maximum value of inventory which may be displayed in the store windows.” 11 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 154:67 (3d ed.2008) (providing overview of relationship between warranties and representations in application for coverage in jeweler's block polices) (internal footnotes omitted).

. When interpreting questions of state law, “a state's intermediate appellate court decisions are the best authority in the absence of any supreme court precedent....” United States v. Simpson, 520 F.3d 531, 536 (6th Cir.2008).

. This court "may affirm on any grounds supported by the record even if different from the reasons of the district court.” Dixon v. Clem, *439 492 F.3d 665, 673 (6th Cir.2007) (citation omitted).