# STATE OF MICHIGAN

# COURT OF APPEALS

JEFFREY D. LYNN,

Plaintiff-Appellant,

v

PROVIDENT LIFE AND CASUALTY
COMPANY,

Defendant-Appellee.

UNPUBLISHED
November 8, 2016

No. 328321
Oakland Circuit Court
LC No. 2014-139764-CK

Before: STEPHENS, P.J., and SAAD and METER, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition to defendant. We affirm.

Plaintiff, a financial advisor with Morgan Stanley Smith Barney LLC, partially stopped working because of a disability.[1] On January 28, 2013, plaintiff applied to defendant for partial long-term disability benefits, which defendant paid, at a rate of $1471 a month, for seven months. Commencing January 8, 2014, defendant terminated the benefits. Plaintiff alleged in his March 26, 2014, complaint that he remained disabled and that defendant's denial breached his insurance policy with defendant. He requested the payment of past and future benefits, as well as costs and attorney fees.

On March 20, 2015, defendant filed a motion for summary disposition under MCR 2.116(C)(10), along with supporting documents. Defendant alleged that, under the insurance policy, partial disability benefits are only available if the insured incurs at least a 20% reduction in income because of a disabling condition. Defendant further alleged that plaintiff conceded that he had incurred no loss of income commencing June 15, 2014, and that, therefore, the present case involved a limited period from August 1, 2011, to June 15, 2014.[2] Defendant

---

[1] Plaintiff suffers from Churg-Strauss Syndrome, a condition that causes the inflammation of small and medium-sized blood vessels.

[2] Plaintiff agreed with this statement in his reply to the motion for summary disposition.

-1-

contended that it properly paid plaintiff for the only seven months in that period during which he was partially disabled within the meaning of the policy. Defendant calculated plaintiff's "prior earnings" under the policy as $33,463 a month for tax year 2010. Defendant stated that this figure included amounts for "incentive pay" and "bonus loan payments" (hereinafter referred to as "EFL[3] payments") and that these amounts were included in calculating plaintiff's current earnings as well. Defendant concluded: "Plaintiff has not posited any alternative explanation or rationale for disputing [defendant's] Loss of Earnings calculations, or for disputing [defendant's] conclusion that he failed to establish a 20% or greater Loss of Earnings for any of the months for which [defendant] did not pay him."

Plaintiff replied on April 13, 2015, requesting that the court deny defendant's motion and instead grant summary disposition to plaintiff. Plaintiff argued that the policy, to allow for the payments at issue, requires a 20% loss of *earnings*, not *income*, and that defendant improperly included in its calculations the EFL payments corresponding to a loan Morgan Stanley gave plaintiff to induce him to leave his prior employment. Plaintiff argued that loan forgiveness should not be counted as earnings under the policy because it does not arise from work and simply passively occurs "[s]o long as plaintiff is an employee . . . ." Plaintiff further argued that defendant's documentary support for including the EFL payments in its calculations consisted of a "claim file memo" by defendant's financial consultant and that her statements in the memorandum were inadmissible hearsay.

Plaintiff attached documentation to his answer, showing that he signed a loan commitment agreement before starting work with Morgan Stanley; for each year of his employment, one-ninth of the loan was to be forgiven. The promissory note stated that the loan "does not constitute a bonus," in conjunction with stating that plaintiff was to repay the loan should he terminate employment with Morgan Stanley.

Defendant filed a reply brief, with supporting documentation, on April 22, 2015, first asserting that the documentation attached to its motion was proper because it was admissible in content even if it was not admissible in form. Defendant further argued that the memorandum prepared by its financial consultant was, nevertheless, admissible in form because it was a business record. Defendant also argued that the EFL payments constituted income under the policy because they were dependent on plaintiff's employment by Morgan Stanley, were included as wages on plaintiff's tax forms, and were classified as part of plaintiff's "earnings" on his pay stubs. Defendant also pointed out that plaintiff, in a letter, expressly referred to the loan in question as a "signing bonus" and "payment for taking a chance." In the letter, plaintiff stated, "They do forgiveness so I am 'chained' to the firm for 9 years."

The motion hearing took place on October 13, 2015. The parties largely reiterated the positions taken in their filings, and the court took the matter under advisement. The trial court filed a detailed opinion on July 7, 2015. The court ruled that the memorandum prepared by defendant's financial consultant was admissible as a business record under MRE 803(6). The

---

[3] Employee Forgivable Loan

court then discussed the loan documents, noting that, in order to receive the EFL payments, plaintiff was expressly required to be employed by Morgan Stanley and to use his best efforts to fulfill his duties. The court also emphasized that the EFL payments were included as "wages" on plaintiff's tax forms. The court found for defendant, concluding:

> Thus, the [c]ourt finds that the EFL payments are properly considered in the calculation of [p]laintiff's Loss of Earnings in this matter.
>
> It is undisputed that when [p]laintiff's Loss of Earnings amount is calculated using the EFL payments, [p]laintiff incurred a 20% or greater Loss of Earnings in the time period from August 1, 2011 through June 15, 2014 only in the seven months for which [p]laintiff received benefits from [defendant].

The present appeal followed.

We review de novo a trial court's ruling regarding a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. at 120. "In evaluating a motion . . . under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Id*. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*.

"[A]n insurance contract must be enforced in accordance with its terms." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999). "[T]he terms of a contract must be enforced as written where there is no ambiguity." *Id*. "While we construe the contract in favor of the insured if an ambiguity is found, this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefitting an insured." *Id*. (citation omitted). Indeed, "[t]he fact that a policy does not define a relevant term does not render the policy ambiguous." *Id*. "Rather, reviewing courts must interpret the terms of the contract in accordance with their commonly used meanings." *Id*.

The policy defines "earnings," in relevant part, as "your salary, wages, commissions, fees, bonuses and any other income earned for the work you do . . . ." It excludes from "earnings" social insurance benefits, disability benefits, sick pay, deferred-compensation or retirement distributions, and benefits received under a formal wage or salary continuation plan.

The note signed by plaintiff that led to the EFL payments provides that the agreement may be terminated "immediately" if plaintiff is no longer employed by Morgan Stanley or if plaintiff "does not devote his[] entire, full and exclusive time, attention and energies to Morgan Stanley's business or his[] best efforts to discharge his[] duties as an employee of Morgan Stanley . . . ." While the "structuring" of the EFL payments is different than the "standard" receipt of a salary or wage, the fact remains that loan forgiveness does indeed constitute income obtained by plaintiff. This commonsense notion is made clear by the fact that the EFL payments are included as wages on plaintiff's W-2 forms for his tax filings and by plaintiff's own characterization of the money as "payment . . . ." In addition, it cannot seriously be contended

-3-

that these payments are not earned "for the work [plaintiff does]," considering that the payments depend on plaintiff's devotion of his "entire, full and exclusive time, attention and energies to Morgan Stanley's business" and require plaintiff's "best efforts to discharge his[] duties as an employee of Morgan Stanley . . . ." The policy is not ambiguous and there is no genuine issue of material fact; the trial court correctly ruled in defendant's favor.

Plaintiff contends that "[d]efendant's expert opinion that the forgivable loan[] installments where [sic] 'earnings' was inadmissible hearsay and not within the business record exception." It is difficult to discern to what, exactly, plaintiff is objecting. He does not argue, for example, that defendant's motion was faulty but seems to be arguing that the trial court should not have depended on the financial consultant's opinion in reaching its decision. However, the opinion of defendant's financial consultant is simply not necessary to determine that the EFL payments were correctly considered; this determination can be made, as discussed above, based on the wording of the insurance contract and other documents. To the extent that plaintiff may be attempting to argue that defendant's motion was procedurally incorrect, he has not adequately supported such an argument. *Caldwell v Chapman*, 240 Mich App 124, 132; 60 NW2d 264 (2000) (discussing waiver).

Affirmed.


/s/ Cynthia Diane Stephens
/s/ Henry William Saad
/s/ Patrick M. Meter