NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0426n.06

No. 15-1501

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 28, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOHN N. THOMSON, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| HARTFORD CASUALTY INSURANCE | ) | DISTRICT OF MICHIGAN |
| COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SILER, GIBBONS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. The trustees and beneficiaries of the Vitello family trust sued Kathleen King O'Brien, a Michigan lawyer, for malpractice. O'Brien sought coverage from her malpractice insurer, Hartford Casualty Insurance Company, which denied her claim because she had failed to timely notify Hartford of the foreseeable possibility that the Vitello trust would pursue a malpractice claim against her. The plaintiffs later won a state-court judgment against O'Brien and filed a writ of garnishment against Hartford to recover the judgment's amount. Hartford removed the case to federal court and then moved for summary judgment, arguing that it had no contractual obligation to cover the trust's malpractice claim. The district court granted Hartford's motion. We affirm.

I.

In 1998, Silverio and Anna Vitello hired Kathleen King O'Brien, a trusts-and-estates lawyer, to establish a family trust for the benefit of the Vitellos' four children. The trust

agreement named O'Brien as independent trustee. In that role, she was responsible for managing the trust's sole asset, a life-insurance policy bearing a face value of $1 million, payable on the death of Silverio or Anna, whoever died later. In the meantime, the policy required Silverio and Anna to pay an annual premium of $25,000.

After Silverio passed away in 2001, Anna became unable to pay the annual premium. The Vitellos' life insurer, Lincoln National, agreed to modify the policy so that Anna would pay only $7,800 per year towards the premium, while Lincoln drew the rest from the equity the Vitellos had already put into the policy. O'Brien established an automatic monthly electronic funds transfer from Anna's bank account to pay the modified premium.

The Vitellos' equity in the insurance policy eventually dried up. In July 2008, Lincoln sent O'Brien a notice informing her that the policy would lapse unless Anna's monthly payments were tripled. O'Brien did not act on the notice. In November 2008, Lincoln sent O'Brien another notice, informing her that the policy would lapse unless Anna made an $8,684.30 payment to Lincoln by December 12, 2008. O'Brien informed neither Anna nor the Vitello children of the pending lapse, and otherwise failed to act on the notice, despite her express responsibility under the trust agreement to "promptly notify [the Vitellos], in writing, of the amount necessary to pay the balance" of any outstanding obligation to Lincoln.

The policy thereafter lapsed, and Lincoln denied O'Brien's belated efforts to reinstate it. Several months later, in May 2009, Anna filed a petition in state probate court to remove O'Brien as trustee. In her petition, Anna complained that "O'Brien has refused to provide Anna Vitello with a copy of the Trust Agreement," and that O'Brien had "not conveyed sufficient information to [Anna] for [Anna] to determine the status of the [life insurance] policy and what options may be available to prevent any lapse." O'Brien resigned later that month, and Michigan

lawyer John Thomson replaced her as independent trustee. The trust eventually obtained another, more expensive life-insurance policy that carried a lower face value.

In June 2010, O'Brien—who had maintained continuous malpractice insurance coverage through Hartford Casualty Insurance Company since 1994—applied to renew her malpractice insurance policy. O'Brien herself specified in the application that the "retroactive date" of the policy was September 3, 1994, and that the "proposed coverage effective date" of the new policy was September 3, 2010. In a section labeled "underwriting questions," the application asked O'Brien whether she was "aware of any act, error or omission that could result in a professional liability claim being made[.]" O'Brien answered "no[.]" Finally, the application carried a disclaimer—marked "IMPORTANT"—warning O'Brien that, "[t]o avoid loss of coverage, it is imperative that all known circumstances, acts, errors, omissions, or personal injuries which could result in a professional liability claim against you . . . be reported to your present insurer within the time period specified in your present policy. All known claims and/or circumstances are specifically excluded by The Hartford, should coverage become effective."

Hartford thereafter renewed O'Brien's policy for a "policy period" running from an "effective date" of September 3, 2010 until an end date of September 3, 2011, and with a "retroactive date" of September 3, 1994. Per the terms of the policy, Hartford promised to indemnify O'Brien for "damages" arising out of "any act, error, or omission . . . committed or alleged to have been committed prior to the end of the 'policy period' and subsequent to the 'retroactive date; provided always that: . . . [s]uch 'damages' result from a 'claim' that is first made against the 'insured' during the 'policy period' and is reported in writing to [Hartford] immediately but in no event later than sixty (60) days after the expiration of the 'policy period'; .

—3—

. . [and a]s of the effective date of this Coverage Form, no 'insured' knew or could have foreseen that such act, error, [or] omission . . . could result in a 'claim[.]'"

In May 2011, Thomson and the Vitello trust's beneficiaries sued O'Brien in Michigan probate court for malpractice and breach of fiduciary duties. O'Brien faxed the complaint to Hartford, which declined to indemnify her after concluding that, as of the effective date of her insurance policy (September 3, 2010), O'Brien could have foreseen (and did not disclose on her application form) that she would be subject to a malpractice claim for her performance as independent trustee of the Vitello trust. O'Brien and the plaintiffs later agreed that O'Brien would assign her indemnity claim against Hartford to the plaintiffs and would "not oppose" the plaintiffs' case in state probate court; in exchange, the plaintiffs promised to seek collection of any state-court judgment only from Hartford. The Michigan probate court entered a $770,065.42 judgment for the plaintiffs after a one-hour bench trial. The plaintiffs sought to collect the judgment by filing a writ of garnishment against Hartford in state court.

Hartford removed the plaintiffs' garnishment action to federal district court. Following discovery, the plaintiffs and Hartford filed cross-motions for summary judgment. The district court denied the plaintiffs' motion and granted Hartford's, after concluding that O'Brien's malpractice-insurance policy did not cover her indemnity claim. This appeal followed.

II.

We review de novo the district court's grant of summary judgment. *See Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 599 (6th Cir. 2014). Summary judgment is proper only if there is no genuine dispute of material fact and Hartford is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The parties have presented no genuine dispute of material fact. Instead they dispute a question of law: namely, whether, under Michigan law, O'Brien's insurance

contract covered the plaintiffs' malpractice claim. *See Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999).

Michigan courts enforce an insurance contract's "clear and precise" terms as they are written. *Id.* The terms of O'Brien's malpractice insurance policy were straightforward: Hartford agreed to indemnify O'Brien for any "damages" stemming from a "claim first made against" O'Brien "during the 'policy period' and . . . reported in writing to [Hartford] immediately[.]" Here, in May 2011, the plaintiffs asserted against O'Brien a claim that fell in the middle of the contract's "policy period," which ran from September 2010 to September 2011. O'Brien then timely reported the claim in writing to Hartford for indemnification. The problem, however, is that the contract expressly disavowed indemnification for claims arising from an act or omission where the insured, "[a]s of the effective date of [the contract], . . . knew or could have foreseen that such act, error, [or] omission . . . could result in a 'claim[.]'" And when the contract took effect in September 2010, O'Brien had every reason to foresee that her nonfeasance as trustee of the Vitello trust—nonfeasance that resulted in her forced resignation in May 2009—might give rise to a malpractice claim against her. Thus, in accordance with the plain terms of the contract, Hartford denied coverage. The district court was right to read the contract the same way that Hartford did.

The plaintiffs argue that, under the contract, O'Brien was entitled to coverage for claims stemming from any "acts, errors, or omissions that occurred after the retroactive date of September 3, 1994 and . . . reported to Hartford during [the] policy period." Plaintiffs' Br. at 38. But in so arguing the plaintiffs overlook the contract's key proviso, which excludes from coverage any claims that the insured could have foreseen at the start of the "policy period"

(September 3, 2010). We must enforce this "clear and precise" contractual term. *Henderson*, 596 N.W.2d at 193.

The plaintiffs contend that this proviso creates "uneven" coverage for Hartford's insureds, and suggest that it works an unfair result because O'Brien had "seamless, uninterrupted" insurance coverage with Hartford under earlier insurance contracts. Plaintiffs' Br. at 38. But under O'Brien's identical 2008-09 contract with Hartford, O'Brien could have obtained coverage for liabilities arising from her nonfeasance by immediately notifying Hartford of the acts and omissions that led to her resignation as trustee. And had she done so, the contract would have covered any later claim as a claim made within the policy period, "regardless of when such 'claim' [was] actually made." O'Brien was denied coverage because she failed to report her nonfeasance, not because she and Hartford entered into an "uneven" insurance contract.

The plaintiffs—the people who sued O'Brien for malpractice—also argue that O'Brien could not have foreseen that they might sue her for malpractice. They contend in particular that O'Brien "had a reasonable belief that she had not committed any act . . . that may give rise to a 'claim' . . . [because] the Petition to remove [O'Brien as trustee] makes no assertions of any acts, errors or omissions." Plaintiffs' Br. at 42. That is incorrect. When Anna Vitello petitioned the state probate court to remove O'Brien, she specifically asserted that O'Brien had failed to provide Anna with "sufficient information . . . to determine the status of the [life-insurance] policy and what options may be available to prevent any lapse." The petition also made clear that any "lapse of the policy" would result in a "tremendous loss of value to the Trust and its beneficiaries." As the district court correctly pointed out, these very allegations "formed the basis" for the successful malpractice claims that the plaintiffs later filed in state court. Soon after

the Vitellos presented these allegations to the probate court, O'Brien resigned her position as trustee. Any reasonable lawyer would have known that this course of events bore the seeds of a malpractice claim.

The district court's judgment is affirmed.