NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0375n.06

No. 17-2186

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ALTERRA EXCESS & SURPLUS CO.,       )
                                    )
    Plaintiff-Appellee,             )
                                    )
v.                                  )
                                    )
EXCEL TITLE AGENCY,                 )
                                    )
    Defendant,                      )
                                    )
WESTERN AMERICAN PROPERTIES,        )
                                    )
    Defendant-Appellant.            )

**FILED**
Jul 26, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE:   ROGERS and BUSH, Circuit Judges; WATSON, District Judge[*]

ROGERS, Circuit Judge.   An insurance company sold a professional-liability insurance policy to a title and escrow agency, under which the insurance company would not cover claims that were known or foreseeable to the agency at the time of the policy's inception.  The insurance company subsequently declined to pay a claim arising from the agency's erroneous transfer of an investor's funds because, before the agency bought the policy, that investor had sent an email threatening to sue the agency for this transfer.  In this appeal, the investor (here as judgment creditor of the agency) contends that the email threatened but did not affirmatively promise a lawsuit, but this is not enough to say that the consequent suit was not foreseeable, especially given

_____

[*] The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

that the agency had also been sued for similar errors by other investors in the same scheme. The investor also argues that the district court erred in presuming that the agency's principals received and read this email, but this argument is forfeited for failure to raise it properly below.

The business then known as the Alterra Excess & Surplus Insurance Company (subsequently merged into the Evanston Insurance Company) sold insurance policies against claims of professional liability. One customer for its services was the Excel Title Agency. On March 22, 2010, Excel submitted an application for professional liability indemnity, in an amount up to $1 million. This policy had a "claims made" period running from April 10, 2010 to April 10, 2011, with a February 15, 2006 "retroactive date," and covered "damages arising out of or resulting from the performance or failure to perform 'Professional Services.'" Alterra and Excel agree that the policy is governed by Michigan law.

This policy also included various limitations on Alterra's obligation to indemnify Excel. The one limitation relevant in this appeal is the so-called "Known Circumstances Exclusion," which excluded coverage for any "'Professional Service' performed and those services that should have been performed or were omitted prior to the effective date of the Policy if any 'Insured' knew or could have reasonably foreseen that the 'Professional Service' could give rise to a 'Claim.'" In other words, if before April 10th, 2010, Excel knew or could have reasonably foreseen that Excel would be the subject of a professional-services claim, then Alterra was not obliged to indemnify Excel for that claim. The policy application asked whether Excel knew "of any circumstances, acts, errors or omissions that could result in a professional liability claim against [Excel]," and Excel answered that it did not.

Excel's self-assessment was not accurate. In the summer of 2008, Excel had accepted large amounts of funds from investors in the real estate schemes of one Corey Howard. Under the plan

that Howard had promised to those investors, Howard would acquire foreclosed real estate properties within a certain period and then sell the properties to the investors for around 50 percent of fair market value. Excel's role was to serve as an escrow agent holding investor funds as earnest-money deposits, and then transfer funds to Howard when the properties closed. When Howard was able to acquire only a fraction of the properties he had promised to obtain, Excel on the direction of Howard nonetheless transferred large sums of the investors' money to Howard, in amounts well in excess of that necessary to pay for the properties that Howard had secured.

Once the investors realized what Excel and Howard had done, they grew distressed. Beginning in September 2008, one investor, the Mt. Tai Asset Management Corp., contacted Excel and Howard to demand the return of the funds it had entrusted to Excel. Two other investors, Hanover Exchange and Lincoln Properties, did the same. All three of these investors ended up suing Howard and Excel; all three suits were resolved, and they are not directly at issue in this appeal.

This suit instead relates to the final investor in Howard's scheme, Western American Properties (WAP), and its principal, James Perley. WAP had also entrusted money with Excel, and Perley also discovered that Excel had misdirected the funds. On July 28, 2009, therefore, Perley sent the following email addressed to, among others, Howard and three Excel principals—Janel Chipman, Judy Stirnemann, and Jenny Kinnard:

> I want you to know that unless suitable inventory or funds are returned by October 22, 2009, I will take all action available against you. There will be no extensions on the 90 days; you have to either deliver the suitable inventory or the money owed to me. This money is the remaining deposit of $374,900 held by Excel Title and Escrow, and my money that was diverted to you outside of my instructions and direction of $649,800 on one occasion, and $536,446 on another separate occasion, by both Excel Title and Escrow, Janel Chipman, and Outlook Escrow, Karen Gardner. Sun [sic] of the amount owed is $1,561,146. If this does not happen by October 22, 2009, I will begin to proceed with all civil and criminal action, both state and federal, against you, Metro Equity Group, Peter Floratos, Kimiko Leong,

> Excel Title and Escrow, Janel Chipman, Judy Stirnemann, Jenny Kinnard . . . among others.

Howard responded, and Perley followed up on this email with another the next day, also sent to Howard and the three Excel principals, among others:

> Corey – I find it ironic that you are the one who is angry when I was the one who had $1,186,246 of my money diverted and not returned when I asked and demanded that it be returned. I also think it is fair to let everybody in this process know what the situation is for them so they will not be surprised or blindsided. I stand by my email. The ball is in your court as to if you can perform. It is totally up to you.

Perley's demands did not achieve the return of funds he had sought. Instead, on December 10, 2009, WAP and Perley sued for misappropriation of funds in the U.S. District Court for the Central District of California against, among others, Howard, Excel, and the Excel principals. On December 15, 2009, the district court dismissed that lawsuit without prejudice for lack of subject matter jurisdiction because an additional defendant was a California citizen, as were Perley and WAP. The record does not show whether Excel or the Excel principals received service or any notice of this suit before its dismissal. WAP and Perley subsequently sued the non-diverse, non-Excel party in California state court in March 2010.

On October 20, 2010—during the "claims made" period of the policy—WAP again sued Excel, the Excel principals, and Howard, this time in the U.S. District Court for the Eastern District of Michigan. On September 12, 2012, the court granted an unopposed motion for summary judgment against Excel, and subsequently entered judgment against Excel in the amount of $1,546,986. Excel does not contest that it owes this liability to WAP.

After WAP won its judgment against Excel, WAP initiated a garnishment proceeding, seeking to have Alterra pay the value of Excel's professional liability indemnity policy over to WAP. Alterra responded by filing the action below, a request for a declaratory judgment that it was not obliged to so pay under the policy. Alterra then moved for summary judgment, and the

district court granted that motion. The court below reasoned that Alterra was not required to indemnify Excel if the Known Circumstances Exclusion applied, and Perley's threats to sue, as well as the similar threats made by other investors, made it clear that Excel did know of or could reasonably have foreseen a claim. WAP moved for reconsideration on the grounds that there was no evidence that Excel or its principals had received and opened this email, but the district court denied that motion as founded on an "unsupported hypothetical." WAP appeals.

The district court properly granted summary judgment to Alterra. Under the Known Circumstances Exclusion to the indemnification policy—determined by the district court to be unambiguous and unchallenged in this respect by WAP on appeal—Alterra was not obliged to indemnify Excel for any claims known or reasonably foreseeable to Excel on April 10, 2010. That Perley and WAP might sue Excel was clearly such a foreseeable prospect at that time. A little over eight months earlier, Perley had sent an email threatening to "begin to proceed with all civil and criminal action, both state and federal, against . . . Excel Title and Escrow," as well as its principals. Then, in December 2009, Perley had followed through on his threat and sued Excel for exactly the things promised in his email. The fact of this first suit would presumably have been enough to make a second suit foreseeable, but the record does not establish whether Excel or its principals were served or otherwise had notice before that first suit was dismissed.

Even if Excel only possessed the email, however, the clear threat of litigation expressed in the July 28, 2009 email unquestionably made WAP's second and successful suit foreseeable prior to April 2010. The email clearly stated that Perley was contemplating suing Excel for exactly the things which Perley did ultimately sue Excel over. The obviousness of this threat could only have been strengthened by the fact that the other investors in Howard's scheme had also sued Excel by

then.  It was therefore clearly foreseeable to Excel that Perley might commence suit, and so the consequent claim arising from that suit was also clearly foreseeable.

Because WAP's claims were foreseeable, they are excluded by the policy's Known Circumstances Exclusion.  Under Michigan law, an insurance contract's "clear and precise" terms control.  *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999).  Here, the policy was clear and precise—Alterra was not obliged to indemnify Excel for foreseeable claims, like the one brought by WAP.

Michigan law makes clear that a claim by WAP was reasonably foreseeable to Excel.  For example, in applying Michigan law we have held that a trustee who had failed to make required payments for that trust and who then was forced to resign could have reasonably foreseen a malpractice claim, and was therefore not required to be indemnified by her insurance company under a similarly unambiguous exclusion provision.  *Thomson v. Hartford Cas. Ins. Co.*, 656 F. App'x 109, 112 (6th Cir. 2016).  In particular, we determined in *Thomson* that the consequent suit there was foreseeable because the action to remove the trustee as trustee had outlined the same allegations that "'formed the basis' for the successful malpractice claims that the plaintiffs later filed" and so any reasonable lawyer would have realized that "the seeds of a malpractice claim" were present.  *Id.* at 113.  That same logic applies here.  Perley's email presented to Excel and its principals the very same facts and alleged violations of law forming the claim on which Perely later successfully sued Excel.  Even if the claim had yet to germinate—in the sense that Perley was not filing immediate suit at the time of the email and it was possible that the litigation might not ultimately commence—a claim was at least foreseeable at the time of the email, since all the things necessary for that claim were there.

Similarly, we have also applied Michigan law to hold that a bank which had mis-administered an estate was excluded from insurance coverage under the operation of an unambiguous exclusion for foreseeable claims, also similar to the one at issue here. *See Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 945 (6th Cir. 1993). The bank there had argued that the claims were not foreseeable because the beneficiaries had not previously objected to the estate's administration, but we rejected that argument because we determined that "no reasonable juror could find that [the bank] could not have reasonably foreseen that at some point in the future it would be subject to suit by the beneficiaries for this misconduct." *Id.* It would have been similarly unreasonable here for Excel not to foresee at least the possibility of a claim following the Perley email, given that there is no dispute that Excel had obviously erred in its responsibilities.

WAP argues that Perley's email merely threatened suit rather than affirmatively promised to begin litigation against Excel, but this is insufficient to prove that a claim brought as threatened in the email was not foreseeable. Perley indeed stated that he would be satisfied if his money was returned or suitable inventory was delivered, but Perley also pledged consequences if his conditions were not met. WAP offers no authority to support its argument that a suit is unforeseeable when a party has conditionally threatened to sue if unsatisfied, and this argument is contrary to the contract's clear exclusion of claims that "could have [been] reasonably foreseen," as opposed to were "likely" or "certain."

That Perley suggested that there was a possibility in which he would not bring suit does not mean Excel could not at least foresee that a suit could well occur, since it was entirely foreseeable that the conditions under which Perley would be satisfied might not (and likely would not) be met. WAP also contends that Excel would not have foreseen that its actions were wrongful, but this contradicts not only Perley's credible threat to file suit, but also the fact that the district

court hearing WAP's subsequent suit against Excel did indeed determine that Excel was liable for its actions.

WAP additionally argues that the district court erred in presuming that Excel and its principals read Perley's email, but this argument was forfeited for WAP's failure to properly raise it below. WAP first argued that Excel might not have received or read the email in its motion for reconsideration of the district court's summary-judgment order, and this fact precludes us from reviewing the issue now. "Arguments raised for the first time in a motion for reconsideration are untimely and forfeited on appeal." *Evanston Ins. Co. v. Cogswell Props, LLC*, 683 F.3d 684, 692 (6th Cir. 2012). Although it addressed the same issue of the email's implication that it also raises here, WAP's response in opposition to Alterra's motion for summary judgment never stated or suggested that the email might not have been received or read. WAP therefore forfeited the new and distinct issue of the email's alleged non-receipt when it failed to present it before WAP's motion for reconsideration.

It is true that the prudential and not jurisdictional nature of forfeiture also means that we can allow a claim first raised in a motion for reconsideration "'in exceptional cases' or when the rule would produce a '"plain miscarriage of justice."'" *Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 F. App'x 409, 411 (6th Cir. 2013) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)). But it is not such an exceptional case or miscarriage of justice to decline to allow WAP's speculative, unsupported, and highly improbable argument that Excel never read or received the email or its follow-up.

We affirm the district court's grant of summary judgment.