# STATE OF MICHIGAN

# COURT OF APPEALS

WESTFIELD INSURANCE COMPANY, for itself and as subrogee of DOUBLEJACK ELECTRIC COMPANY, INC.,

        Plaintiff/Counterdefendant-Appellee,

v

JENKINS CONSTRUCTION, INC.,

        Defendant/Cross-Plaintiff/Cross-Defendant-Appellant,

and

DOUBLEJACK ELECTRIC COMPANY, INC.,

        Defendant/Counterplaintiff/Cross-Plaintiff/Cross-Defendant-Appellee,

and

WADE TRIM ASSOCIATES, INC.,

        Defendant,

and

ECORSE CREEK POLLUTION ABATEMENT DRAIN NO. 1 DRAINAGE DISTRICT,

        Defendant/Counterplaintiff/Cross-Plaintiff,

and

COMMERCE CONTROLS, INC.,

        Defendant/Cross-Defendant.

UNPUBLISHED
September 6, 2018

No.  337968
Wayne Circuit Court
LC No.  15-012569-CB

-1-

Before: SWARTZLE, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

In this declaratory judgment action, Jenkins Construction, Inc. (Jenkins) appeals as of right the trial court's order granting summary disposition in favor of Doublejack Electric Company (Doublejack), the insured of Westfield Insurance Company (Westfield), and also appeals the trial court's earlier order granting summary disposition in favor of Westfield. We affirm.

## I. FACTS

The substantive facts of this case are not in dispute. The Ecorse Creek Pollution Abatement Drain No. 1 Drainage District (ECPAD) decided to upgrade the Taylor (Pelham) Basin located in Taylor, Michigan. ECPAD hired Wade Trim Associates, Inc. (Wade Trim), an engineering firm, to conduct pre-construction engineering studies for purposes of assessing the viability of the basin and identifying necessary improvements. ECPAD subsequently hired Wade Trim to provide engineering and construction services for the design, bidding process, and construction management of the project. ECPAD hired Jenkins to serve as the general contractor for the basin improvements designed by Wade Trim. Jenkins contracted with Doublejack to perform the electrical work on the project. Doublejack, in turn, contracted with Commerce Controls, Inc. (Commerce Controls) to design, install, and test the instrumentation and controls.

A few weeks after completion of the basin improvements, but before Jenkins received final payment from ECPAD, a heavy rainstorm caused the basin to overflow when the computerized controls failed to function, which resulted in catastrophic structural damage to the basin and released sewage onto nearby property. Apparently, Commerce Controls worked with Wade Trim on the design and installation of the computerized controls that were intended—but failed—to prevent this type of catastrophic event. Jenkins initially filed a lawsuit against ECPAD in 2014, seeking final payment. Numerous parties subsequently entered the suit, filing various counterclaims and crossclaims. Most of those claims were settled or otherwise resolved after case evaluation.

While this was ongoing, Westfield brought a separate lawsuit on behalf of itself and Doublejack for declaratory and other relief, seeking a ruling on the extent of their obligations. Westfield's suit was eventually combined with Jenkins's initial suit, and this is the case now before this Court. Similar to the suit filed by Jenkins, various parties filed a slew of crossclaims and counterclaims as part of Westfield's suit, most of which eventually settled or were otherwise resolved. The trial court issued rulings on only a few claims, and only two of those rulings are now on appeal: (1) the trial court's ruling that Westfield was not obligated to indemnify Jenkins for certain damages or for Jenkins's liability on a professional-services claim; and (2) the trial court's ruling that Doublejack was not obligated to indemnify Jenkins under their separate indemnity agreement for claims not covered by Westfield.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition in an action for a declaratory judgment." *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 512-513; 810 NW2d 95 (2011). The trial court granted summary disposition under MCR 2.116(C)(7) and (10).

"In a summary disposition motion brought pursuant to MCR 2.116(C)(7), the court must consider the affidavits, pleadings, depositions, admissions, and any other documentary evidence submitted by the parties to determine whether a genuine issue of material fact exists. *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW 124 (2010). If no material facts are in dispute, and if reasonable minds could not differ regarding the legal effect of the facts, whether a claim is barred is a legal issue for the court. *Dextrom v Wexford Co*, 287 Mich App 406, 431; 789 NW2d 211 (2010).

A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). When reviewing a motion for summary disposition brought under subrule (C)(10), the court must examine all documentary evidence presented to it, and drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. *Dextrom*, 287 Mich App at 430. A trial court properly grants the motion when the evidence fails to establish any genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

Questions concerning the proper interpretation and application of an insurance contract are questions of law that this Court reviews de novo. *TBCI, PC v State Farm Mut Auto Ins Co*, 289 Mich App 39, 42; 795 NW2d 229 (2010).

### III. JENKINS'S APPEAL AGAINST WESTFIELD

The trial court granted Westfield's motion for summary disposition pursuant to MCR 2.116(C)(10). Jenkins argues that the trial court erred when it held that Jenkins was not entitled to indemnification under Westfield's Commercial General Liability (CGL) policy for certain damages and expenses Jenkins incurred by litigating the claims in this case.

The duty to indemnify "arises only with respect to insurance afforded by the policy." *American Bumper & Mfg Co v Hartford Fire Ins Co*, 452 Mich 440, 450; 550 NW2d 475 (1996). In determining whether an insurer has a duty to indemnify its insured, the Court looks to the policy language to discern whether the duty arises. *Oakland Co Bd of Co Rd Comm'rs v Michigan Prop & Cas Guaranty Ass'n*, 456 Mich 590, 601 n 6; 575 NW2d 751 (1998). When reviewing the language of an insurance policy, we "interpret the terms therein in accordance with Michigan's well-established principles of contract construction." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). Consequently, the terms of an insurance policy are enforced as written, unless an ambiguity exists. *Id*.

The first section of the CGL policy is entitled, "Section I—Coverages" and continues "Coverage A: Bodily Injury and Property Damage Liability." It reads in relevant part:

1. Insuring Agreement

      a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

* * *

      b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

Thus, pursuant to "Coverage A," Westfield's CGL policy covers an insured's liability for "property damage" caused by an "occurrence." In pertinent part, the term "property damage" is defined in the policy under "Section V—Definitions" at "17" as

> [p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it . . . .

Here, it is not disputed that ECPAD suffered damage caused by an occurrence—the accidental overflowing and collapse of the basin—so ECPAD's claims to recover property damage resulting from the occurrence fell under Westfield's CGL policy. Westfield, as part of the various settlements, covered ECPAD's claims of property damage, including that damage as attributable to Jenkins. Westfield not only covered ECPAD's claims of property damage against Jenkins, but it also assumed Jenkins's defense of those claims because Doublejack's policy with Westfield covered Jenkins as an additional insured. As a result of Westfield's involvement, ECPAD's claims for property damage were resolved through case evaluation.

Jenkins was also involved in case evaluation as a separate party, and, for its part, Jenkins agreed to pay ECPAD $100,000 in liquidated damages. On appeal, despite that Westfield already covered the property-damage claims, Jenkins argues that Westfield was also required to indemnify Jenkins's liability to ECPAD for the agreed-upon liquidated damages, as well as other expenses incurred by Jenkins, including a "$140,000 Bond expense," "$160,268.32 in legal fees and expenses," and "the potential claims of other sub-contractors for legal expenses in the amount of $194,598.25." Jenkins reasons that Westfield was responsible for these damages and expenses under the CGL policy because, although not labeled property damages, the damages were nonetheless property damage involving both physical and intangible consequential damages resulting from the occurrence.

To determine whether an insurer has a duty to indemnify, "a court must focus on the cause of the injury to ascertain whether coverage exists," and "[i]t is the substance rather than the form of the allegations in the complaint which must be scrutinized. *US Fidelity & Guarantee Co v Citizens Ins Co of America*, 201 Mich App 491, 494; 506 NW2d 527 (1993). Here, focusing on the cause of the injury and not the terminology used in Jenkins's pleadings, we find Jenkins's argument unconvincing. Jenkins's claimed damages are simply not covered by the terms of the

-4-

CGL policy because Jenkins has not shown, and we can find no basis to conclude, that the $100,000 in "liquidated damages"—or the other expenses Jenkins incurred or might incur—represent "property damage" sustained as a result of the loss of use of the basin. Thus, Jenkins has failed to establish that, pursuant to the terms of the CGL policy, Westfield was required to indemnify Jenkins for any of the requested damages or expenses.

Next, Jenkins asserts that the trial court erred when it ruled that Westfield was not required to indemnify Jenkins for any liability Jenkins had to Wade Trim for ECPAD's professional-negligence claim against the engineering firm.[1] In the underlying case, ECPAD brought suit against Wade Trim for professional negligence. After case evaluation, both ECPAD and Wade Trim accepted the sum of $600,000 for ECPAD's claim. Westfield did not cover Jenkins's indemnity liability to Wade Trim because, according to Westfield, the CGL policy did not cover anyone in connection with Wade Trim's professional services. The trial court agreed with Westfield's interpretation of the CGL policy.

The CGL policy includes a section called, "Amendment of Insured Contract Definition." This section states, "This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part." The endorsement applies to the "Additional Insured" section of the CGL policy, and states in pertinent part:

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" caused in whole or in party by the rendering of, or the failure to render, any professional architectural, engineering, or surveying services, including:

* * *

b. Supervisory, inspection, architectural, or engineering activities.

Jenkins does not dispute that ECPAD sued Wade Trim for property damages caused by engineering errors and omissions in the performance of two different engineering contracts, and also for failure to supervise the contractors to ensure compliance with its engineering designs. Under these facts, Westfield had no duty to indemnify Jenkins for Wade Trim's professional negligence based on the professional-services exclusion in the CGL policy's endorsement, which unambiguously denied coverage to additional insureds for property damage caused by "[s]upervisory, inspection, architectural, or *engineering* activities." Thus, to the extent that Wade Trim had any claim to recover part of its $600,000 settlement with ECPAD from Jenkins, Jenkins had no basis to seek indemnity from Westfield under the CGL policy.

## IV. JENKINS'S APPEAL AGAINST DOUBLEJACK

---

[1] It is unclear what amount, if any, Jenkins owed Wade Trim pursuant to their indemnification agreement.

The trial court granted summary disposition in favor of Doublejack pursuant to MCR 2.116(C)(7) and (C)(10). Jenkins argues that the trial court erred when it dismissed all of Jenkins's remaining claims against Doublejack because, under either a theory of express contractual indemnity or implied contractual indemnity, Doublejack was required to cover all of Jenkins's damages and expenses that the trial court found Westfield not responsible for.

Article XXII in the contract between Jenkins and Doublejack is an indemnification provision, and it states in pertinent part:

> The Subcontractor hereby assumes entire responsibility and liability for any act and all damages or injury of any kind or nature, (including death resulting there from) to any persons, whether employees or any tier of the Subcontractor, or otherwise, and to all property caused by, resulting from, arising out of, or occurring in connection with the execution of the Work, or in preparation for the Work, or any extension, modification or amendment to the Work by change order or otherwise.

"[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005).

Here, Jenkins is not entitled to express contractual indemnification because its claims do not come within the scope of Article XXII. Under Article XXII, Doublejack's "responsibility and liability" to Jenkins is for "any act and all damages or injury of any kind or nature" "to any persons . . . and to all property." Article XXII is unambiguous, so it must be enforced as written. The damages Jenkins sought are not tort-based and simply do not fall into the category of personal injury or property damage covered under Article XXII. Thus, Article XXII clearly does not require Doublejack to indemnify Jenkins for the damages Jenkins seeks.

Likewise, Jenkins is not entitled to implied contractual indemnification against Doublejack. "In order to establish an implied contract to indemnify, there must be a special relationship between the parties or a course of conduct whereby one party undertakes to perform certain services and impliedly assures indemnification." *Palomba v East Detroit*, 112 Mich App 209, 217; 315 NW2d 898 (1982). On appeal, Jenkins does not explain how it meets the legal requirements for entitlement under an implied-contractual-indemnification theory. As observed by our Supreme Court:

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it. [*Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) (citations omitted).]

Based on Jenkins failure to present any argument regarding implied contractual indemnification, we conclude that Jenkins abandoned this claim.[2]

Affirmed.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien

---

[2] Because Jenkins has not prevailed on either issue, the trial court did not err in declining to grant summary disposition pursuant to MCR 2.116(I)(2) in favor of Jenkins.