# STATE OF MICHIGAN

# COURT OF APPEALS

ABDUL MALIK IBRAHIM, a legally
incapacitated and protected person, by Guardian,
FATMA MUSSA, and Conservator, JOELLE
GURNOE-ADAMS,

UNPUBLISHED
November 12, 2019

Plaintiffs-Appellants,

v

No. 346193
Washtenaw Circuit Court
LC No. 18-000135-NF

USAA CASUALTY INSURANCE COMPANY,

Defendant-Appellee.

Before: M.J. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeal as of right the trial court's order granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(10). We affirm.

## I. FACTUAL BACKGROUND

In 2002, plaintiff sustained a traumatic brain injury from a motor vehicle collision and now requires 24-hour care. Plaintiff sought benefits from defendant under the no-fault insurance act, MCL 500.3101 *et seq*. In 2003, defendant drafted and plaintiff signed an agreement (the Agreement) whereby defendant would grant to plaintiff a purchase money mortgage in the amount of $300,000 to cover plaintiff's purchase of a home and real property. The Agreement also provided a 20-year amortization schedule whereby the $300,000 debt would be reduced by 5% every year until it was completely extinguished. Plaintiff's mother, who provided attendant care to plaintiff, decided to live with plaintiff in his new house along with the rest of their family. Because defendant was not obligated to provide plaintiff's family a home, the Agreement stated that plaintiff's family would pay rent to defendant in the amount of $1,440 per month. The Agreement further stated that rent would be paid "in the form of a reduced attendant[-]care rate from $12.00 per hour to $10.00 per hour."

The parties appear to have abided by the contract for fifteen years. In 2018, however, plaintiff filed this action, arguing that the Agreement did not actually cap the attendant-care rate at $10 per hour, and that plaintiff's mother was entitled to earn $18 an hour. Defendant moved for summary disposition, arguing that the Agreement unequivocally capped the attendant-care

-1-

rate at $10 an hour for the 20-year life of the mortgage. The trial court agreed with defendant and granted summary disposition. On appeal, plaintiff again argues that the Agreement does not cap the attendant-care rate at $10 an hour for 20 years, and alternatively, that there was no consideration to support such a promise. We disagree, and conclude that, so long as plaintiff's family is living with plaintiff *and* personally providing plaintiff's attendant care, the Agreement unequivocally caps the family-provided attendant-care rate at $10 per hour.

## II. ANALYSIS

This Court reviews de novo a grant of summary disposition pursuant to MCR 2.116(C)(10). *Henderson v State Farm Fire and Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). A party moves for summary disposition when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgement or partial judgment as a matter of law." MCR 2.116(C)(10). Motions under MCR 2.116(C)(10) test the factual sufficiency of a claim. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). When determining whether to grant a motion for summary disposition, "a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Finally, this Court reviews de novo the interpretation of contracts. *Henderson*, 460 Mich at 353.

Insurance contracts are subject to "the same contract construction principles that apply to any other species of contract." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). The "primary goal in interpreting any contract is to give effect to the parties' intentions at the time they entered into the contract." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 85; 878 NW2d 816 (2016). Courts must "determine the parties' intent by interpreting the language of the contract according to its plain and ordinary meaning." *Id*. at 85-86. In doing so, courts must respect the parties' freedom to contract because "parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstances, such as a contract in violation of law or public policy." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003). Accordingly, our Supreme Court has held that, in the absence of a violation of law or public policy, "[i]f the language of a contract is unambiguous, we must enforce the contract as written." *Bank of America*, 499 Mich at 86. And, "[i]f the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous." *Meagher v Wayne State Univ*, 222 Mich App 700, 722; 565 NW2d 401 (1997). If the language is ambiguous, however, the language "should be construed against the drafter, i.e., the insurer." *Wilkie*, 469 Mich at 62.

In this case, the Agreement unambiguously limits plaintiff's mother to $10 per hour for providing attendant care in exchange for the rent she would otherwise owe defendant. The relevant paragraphs of the Agreement provide as follows:

> 1. In consideration of AbdulMalik [sic] Ibrahim's current and anticipated needs for reasonable home accommodations caused by injuries sustained in a motor vehicle accident and as evidence [sic] by the medical records and opinions of the health care providers involved in AbdulMalik [sic] Ibrahim's care, USAA

will pay the sum of Three Hundred Thousand and 00/100 Dollars ($300,000.00) in the form of purchase money for a home and real property . . . .

2. USAA shall not be an owner of the Residence. The interest of USAA shall be secured by a first priority purchase money mortgage (Mortgage) with the Estate of AbdulMalik [sic] Ibrahim granting to USAA a Mortgage on the Residence in the amount of Three Hundred Thousand and 00/100 Dollars ($300,000.00).

3. It is further agreed between the parties that a Twenty (20) year declining balance amortization schedule will be established whereby the Mortgage Debt will be reduced by Five (5%) percent for each year that AbdulMalik [sic] Ibrahim lives in the Residence. Assuming that AbdulMalik [sic] Ibrahim resides in the Residence continuously for the duration of the Twenty (20) year amortization period, the Mortgage Debt shall be extinguished. The amortization schedule will commence upon the closing on the sale of the Residence and will continue until fully amortized or until the occurrence of a Triggering Event. In the event of a Triggering Event as defined herein,[1] the amount of the Mortgage Debt to be credited to USAA shall be fixed as of the date of the occurrence of such Triggering Event and USAA shall have all remedies provided herein and at law or equity.

* * *

14. The parties agree that the Residence is being provided as a reasonably necessary accommodation for AbdulMalik [sic] Ibrahim's care, recovery, and rehabilitation and acknowledge that USAA does not have an obligation to provide accommodations for the family of AbdulMalik [sic] Ibrahim. As such, the parties agree that a fair and reasonable rate for the rental of the Residence by AbdulMalik [sic] Ibrahim's family is $1440.00 per month ('Rent'). By signing this Accord and Satisfaction, Yusuf A. Ibrahim and Falma M. Mussa agree to pay Rent to USAA for each month that members of AbdulMalik [sic] Ibrahim's family reside in the Residence, until the occurrence of a Triggering Event or the expiration of the amortization period.

The parties have agreed that Yusuf A. Ibrahim and Falma M. Mussa will pay Rent to USAA in the form of a reduced attendant[-]care rate from $12.00 per hour to $10.00 per hour. In the event that the number of hours of attendant care is reduced either by choice or for medical reasons by AbdulMalik [sic] Ibrahim's

---

[1] The Agreement defines a "triggering event" as any of the following: (1) plaintiff's death, (2) plaintiff's change of residence or domicile, (3) plaintiff's assignment, conveyance, or transfer of his interest in his home without defendant's consent, (4) plaintiff's failure to properly insure his home, (5) plaintiff's or his family's failure to pay property taxes, or (6) any other material breach of the Agreement by plaintiff.

physician, the balance of the Rent owed will be deducted from what USAA would otherwise pay to Yusuf A. Ibrahim and/or Falma M. Mussa at the end of each calendar month (i.e. if the number of hours of attendant care are reduced to 18 hours per day, the total number of hours of attendant care per month is 540. 540 hours multiplied by the reduction of $2.00 per hour yields a credit toward rent of $1080.00, leaving a balance of $360.00. At 540 hours of attendant care multiplied by $10, the amount ordinarily owed would be $5400.00. However, reducing the amount ordinarily owed of $5400.00 by the balance of $360 yields a total attendant[-]care payment of $5040.00).

In the event that Yusuf A. Ibrahim and Falma M. Mussa discontinue family[-]provided attendant care, payment of Rent must be made by cashier's check on the first day of each month to USAA.

The trial court noted that defendant could have written the Agreement in a "far more simple" way, but nonetheless concluded that it was clear from the Agreement that the family-provided attendant-care rate and cost of rent were fixed throughout the life of the mortgage. We agree.

The Agreement states that defendant agreed to mortgage plaintiff's home with a "[t]wenty (20) year declining balance amortization schedule . . . whereby the Mortgage Debt will be reduced by Five (5%) percent for each year that [plaintiff] lives in the Residence." The Agreement also states that, so long as plaintiff's family lives in the home, the family must pay rent each month to defendant in the amount of $1,440 per month because defendant is not obligated to provide the family living accommodations. Furthermore, the Agreement explicitly states that the parties "agreed that [plaintiff's family] will pay Rent to [defendant] in the form of a reduced attendant-care rate from $12.00 per hour to $10.00 per hour."[2] Finally, the Agreement states that if plaintiff's family stops providing "attendant care, payment of Rent must be made by cashier's check on the first day of each month to [defendant]."

Reading the contract as a whole, it is apparent that the $10 per hour attendant-care rate and the rent owed by plaintiff's family are fixed for the 20-year amortization period. See *Wilkie*, 469 Mich at 50 n 11. And, although plaintiff argues now that $10 per hour is not enough to cover his mother's current expenses, this Court must "give effect to the parties' intentions at the time they entered into the contract." *Bank of America*, 499 Mich at 85. It is worth noting that the Agreement only speaks to family-provided attendant care, and the fixed rate is indisputably

---

[2] The math underlying this provision is not outlined in the Agreement, however, defendant clarified in its brief on appeal as follows:

[T]he $2 difference per hour between the agreed-to $10 per-hour attendant-care rate and the $12 per-hour rate, when multiplied by 24 hours, equates to $48 per day, and that this $48 per day amount, when multiplied per month, amounts to the $1,440 per month owed in rent by plaintiff to defendant USAA.

attached to rent. Thus, the fixed rate only applies so long as plaintiff's family is living with plaintiff *and* providing attendant care. That is, to the extent plaintiff's mother needs to do so to cover expenses, nothing bars her from seeking other employment, paying rent on the first of every month, and allowing defendant to cover alternative replacement services. In any event, the clear language of the Agreement is unambiguous, and the trial court therefore did not err in concluding that the Agreement capped the attendant-care rate at $10 an hour for the 20-year life of the Agreement.

Plaintiff next contends in the alternative that there was no consideration to support plaintiff accepting $10 an hour for 20 years, and thus, that provision of the Agreement is unenforceable. We disagree.

A valid, enforceable contract has five elements: "1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v State of Mich*, 497 Mich 197, 235; 866 NW2d 782 (2015). Consideration is "a bargained-for exchange—a benefit on one side, or a detriment suffered, or service done on the other." *Bank of America*, 499 Mich at 101 (quotation marks and citations omitted). "Generally, courts do not inquire into the sufficiency of consideration: [a] cent or a pepper corn, in legal estimation, would constitute a valuable consideration." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 508; 885 NW2d 861 (2016) (quotations marks and citation omitted; alteration in original). The party asserting that there is no consideration bears the burden of establishing that fact. *Adell Broadcasting v Apex Media Sales*, 269 Mich App 6, 12; 708 NW2d 778 (2005).

In this case, the Agreement evidences that consideration existed on both sides. In consideration of plaintiff's family living in the home financed by defendant, the parties agreed that the family would pay a fixed rate of $1,440 per month in rent. Instead of plaintiff's family writing a check each month to defendant, the parties agreed to offset the pay rate of attendant care from $12 an hour to $10 an hour so that defendant would recoup the cost of rent each month. Plaintiff's family obtained the ability to live in the home financed by defendant, defendant received rent for that ability, and both parties received the benefit of a simplified, uniform financial transaction that covered both the cost of attendant care *and* rent. Therefore, the Agreement was supported by consideration.

Having concluded that the Agreement was supported by consideration, and that the language of the Agreement unambiguously caps the family-provided attendant-care rate at $10 per hour so long as plaintiff's family lives in his home, the trial court did not err in granting summary disposition and dismissing plaintiff's case.

Affirmed.

/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle