*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ZACHARY RIDENOUR,

UNPUBLISHED
March 2, 2023

Plaintiff-Appellant,

v

No. 356734; 356815
Ingham Circuit Court
LC No. 19-000405-NF

PROGRESSIVE MARATHON INSURANCE
COMPANY,

Defendant-Appellee.

Before: M. J. KELLY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

These consolidated appeals arise from defendant, Progressive Marathon Insurance Company's, denial of personal protection insurance (PIP) benefits to plaintiff, Zachary Ridenour. In Docket No. 356734, Ridenour, appeals as of right the trial court order granting summary disposition in favor of Progressive under MCR 2.116(C)(10) and denying Ridenour's cross-motion for summary disposition under MCR 2.116(I)(2). In Docket No. 356815, Ridenour appeals as of right trial court order denying his motion to amend his complaint. For the reasons explained below, we affirm.

## I. BASIC FACTS

On November 6, 2018, Ridenour was severely injured in a single-vehicle motor-vehicle crash. At the time of the accident, the vehicle Ridenour was driving—which was owned by and registered to him—was insured under a no-fault automobile insurance policy issued by Progressive to Ridenour's friend, Floyd Layport. Ridenour was listed as an additional driver on the policy, but the only named insured was Layport and Layport's address was the only address listed. The parties dispute whether there was fraud in the procurement of the policy. Progressive presented evidence suggesting that Ridenour had moved to a new address months before the policy was issued and that the only reason Ridenour was on Layport's policy was because he could not afford the premiums on a policy issued in his own name. In contrast, Ridenour submitted evidence indicating that he was alternating residences between Layport's home in Edmore, Michigan and a home in Elm Hall, Michigan, that he intended to reside in after the property was cleaned up and certain

-1-

repairs were completed. Following an investigation, Progressive denied Ridenour's claim for PIP benefits. The stated basis for the denial was the policy's fraud-exclusion provision.

On May 30, 2019, Ridenour filed a complaint, seeking first-party PIP benefits from Progressive under the no-fault act, MCL 500.3101 *et seq*.[1] Relevant to the issues raised on appeal, Progressive asserted in its answer and affirmative defenses that it was not in the highest order of priority for the payment of PIP benefits to Ridenour and that Ridenour's claims were, in whole or in part, fraudulent. Following discovery, Progressive moved for summary disposition. Progressive argued that the undisputed facts established that it was not in the order of priority for Ridenour's PIP benefits because (1) for purposes of MCL 500.3114(1), Ridenour was not the named insured, the named insured's spouse, or a relative of either domiciled in the same household, and (2) for purposes of MCL 500.3114(4) Progressive was not the insurer of the owner or registrant of the vehicle involved, nor was it the insurer of the operator of the vehicle involved.

In response, Ridenour argued that Progressive was precluded by the "mend the hold" doctrine from raising a priority defense because it had induced him into litigation on other grounds. He asserted that Progressive's failure to inform him of the priority defense prejudiced him because the Michigan Automobile Insurance Placement Facility had not been added as a party. Ridenour also argued that, even if Progressive was allowed to assert a priority defense, Progressive would be first in priority under MCL 500.3114(4) because Progressive was the insurer of the registrant of the vehicle involved in the accident and the insurer of that vehicle's operator. In the same pleading, Ridenour sought a cross-motion for summary disposition, asserting that at the time of the accident he was "in his own vehicle insured by Defendant Progressive." He added that Progressive's fraud defense was based on inadmissible hearsay and speculation whereas the facts showed that no fraud had been committed by Ridenour when his vehicle was added to Layport's policy. Ridenour argued that, as a result, Progressive could not meet its burden of showing to a reasonable degree of certainty that fraud was committed by Ridenour when Ridenour's vehicle was added to an existing policy of insurance. Ridenour also moved to amend his complaint to add claims of promissory estoppel and errors and omissions related to Progressive's issuance of the insurance policy and providing proof of insurance for him and his vehicle.

The trial court heard oral argument on the motions for summary disposition. Following the hearing, the court granted summary disposition in favor of Progressive. The court rejected Ridenour's argument that the mend-the-hold doctrine precluded Progressive from relying on a priority defense. Instead, the court held that Progressive was not first in priority for Ridenour's PIP claim under MCL 500.3114(1) because Ridenour was not a named insured on Layport's no-fault insurance policy and because—regardless of his residency at the time of the accident—Ridenour was not related to either Layport or Layport's wife. The court also concluded that Progressive was not first in priority under MCL 500.3114(4) because, under the policy language,

---

[1] Effective June 11, 2019, the Legislature substantially amended the no-fault insurance act. See 2019 PA 21. Because this case began in May 2019, before the enactment of the amendments, this case is controlled by the former version of the no-fault act. See *George v Allstate Ins Co*, 329 Mich App 448, 451 n 3; 942 NW2d 628 (2019). Therefore, unless otherwise stated, references to the no-fault act are to the version in effect at the time this case was commenced.

Progressive was not the insurer of the registrant or owner of the vehicle involved in the crash. Consequently, the court held that Ridenour's arguments related to the fraud defense were moot. Later, the court held a hearing on Ridenour's motion to amend the complaint. The court denied the motion after concluding that any such amendment would be futile.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Ridenour argues that the trial court erred by granting Progressive's motion for summary disposition. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Likewise, we review de novo questions of law, such as the interpretation and application of statutes, *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008), and the interpretation of insurance policies, *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 507; 967 NW2d 841 (2021).

### B. ANALYSIS

#### 1. PRIORITY DEFENSE

To determine which insurer is designated to provide PIP benefits to a person injured in a motor-vehicle accident, "MCL 500.3114 instructs a person to pursue his or her 'claim' for PIP benefits from insurers according to the listed order of priority." *Griffin v Trumbull Ins Co*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 162419); slip op at 9. Under MCL 500.3114(1), an injured person must generally seek PIP benefits from his or her own insurer. *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 298; 876 NW2d 853 (2015). MCL 500.3114(1) provides, in relevant part:

> Except as provided in subsections (2), (3), and (5), a [PIP] policy described in [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. [Emphasis added.]

Ridenour does not dispute that he is not a named insured on the policy and that he is not a relative of the named insured or the named insured's spouse. As such, Progressive is not first in priority under MCL 500.3114(1).

"MCL 500.3114(4) applies when the injured person is not covered by his or her own insurance or the insurance of a relative domiciled in the same household under MCL 500.3114(1) and permits the injured person to seek benefits from the no-fault insurers of others, including the vehicle's owner, registrant, or operator." *Stone v Auto-Owners Ins Co*, 307 Mich App 169, 176; 858 NW2d 765 (2014). MCL 500.3114(4) provides:

> (4) Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim [PIP] benefits from insurers in the following order of priority:

(a) The insurer of the owner or registrant of the vehicle occupied.

(b) The insurer of the operator of the vehicle occupied.

Ridenour argues that under MCL 500.3114(4), Progressive is in the order of priority to provide PIP benefits to him. Ridenour notes that he was both the owner and operator of the motor vehicle involved in the crash. He argues that, under the plain language of Layport's no-fault policy, he was an eligible injured person, which means that Progressive was his insurer for purposes of the priority statute. We disagree.

"[E]ven if the owner, registrant, or operator of a vehicle is not a named insured under a policy, the named insured's insurer may also constitute an 'insurer' of the owner, registrant, or operator under MCL 500.3114(4) if the policy expands the definition of 'insured person' beyond the named insured so that it includes those persons." *Stone*, 307 Mich App at 176-177. Further, an "insurer" has been defined by this Court as "one who agrees, by contract, to assume the risk of another's loss and to compensate for that loss." *Id*. at 177 (quotation marks omitted). For purposes of MCL 500.3114(4), whether an insurance company is the "insurer" of the owner, registrant, or operator of the vehicle occupied "depends on the language of the relevant insurance policy." *Dobbelaere v Auto-Owners Ins Co*, 275 Mich App 527, 532-534; 740 NW2d 503 (2007).

When interpreting an insurance contract, this Court construes contractual terms in context, according to their commonly used meanings. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999). A court will not hold an insurance company liable for a risk it did not assume. *Id.* "The policy application, declarations page of policy, and the policy itself construed together constitute the contract." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005). The Court must interpret a contract in a way that gives every word, phrase, and clause meaning, and we must avoid interpretations that render parts of the contract surplusage. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003).

Progressive's policy provided, "In return for payment of the premium, **we** agree to insure **you** subject to all the terms, conditions, and limitation of this policy . . ." The general definitions section of the policy defined "you" as "a person shown as a named insured on the declarations page" and "the spouse of a named insured if residing in the same household at the time of loss." The declarations page of the policy showed only Layport as a named insured.

Under Part I of Progressive's insurance policy—which governed liability to others—the policy provided with respect to bodily injury and property damage liability coverage:

> If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

With respect to limited property damage coverage, Part I provided:

> If **you** pay the premium for this coverage, **we** will pay for damage to a motor vehicle, up to the limits of liability shown on the **declarations page**, for which an

-4-

**insured person** become legally responsible because of an accident . . . which arises out of the ownership, maintenance, or use of an **auto** . . . .

For purposes of Part I, the policy defined "**insured person**" as "you, a relative, or a rated resident." The policy defined "**rated resident**" as "a person residing in the same household as **you** at the time of the loss who is not a **relative**, but only if that person is both: a. listed in the 'Drivers and household residents' section" on the **declarations page**; and b. not designated as either an 'Excluded' or a 'List Only' driver."

Similarly, in Part III—which provided the insuring agreement for uninsured and underinsured motorist coverage—the policy provided:

> If you pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured vehicle** because of **bodily injury** . . . .

For purposes of Part III, the policy again defined "insured person" as "you, a relative, or a rated resident."

Neither Part I nor Part III of the policy are at issue here, however. Instead, Part II of the policy governs PIP coverage. It provides:

> If **you** pay the premium for this coverage, **we** will pay [PIP] benefits required by the [no-fault act] for accidental **bodily injury** to an **eligible injured person** arising out of the ownership, operation, maintenance, or use of a **motor vehicle**, subject to the exceptions, exclusions and limitations specified herein as additionally provided by the law of the State of Michigan.

The insuring agreement provided additional definitions for Part II:

> 2. **"Eligible injured person"** means:
>
> a. **you** or any **relative** who sustains accidental **bodily injury** in an accident involving a **motor vehicle**;
>
> b. any other person who meets the statutory requirements of [the no-fault act].
>
> c. any person who, while not occupying a **motor vehicle**, sustains accidental **bodily injury** as a result of an accident . . . .

Although the term "insured person" is defined elsewhere in the policy for different coverages and expands the definition to include "rated drivers," the provisions concerning PIP coverage do not.

Under the facts of this case, it is clear that Ridenour is not an eligible injured person under Subsection (2)(a) because he is not the named insured or a relative of the named insured. Nor is he an eligible injured person under subsection (2)(c) because he was an occupant of a motor vehicle when he was injured.

Subsection (2)(b) defines "eligible injured person" as "any other person who meets the statutory requirements of [the no-fault act]," but does not define what the policy means by "the statutory requirements of the [no-fault act]." Ridenour argues that he met the statutory requirements of the no-fault act because he sustained accidental bodily injury arising out of a motor-vehicle accident, MCL 500.3105, and that none of the statutory exclusions of MCL 500.3113 would apply to the facts of this case. Yet, in *Dye by Siporin & Assoc, Inc v Esurance Prop & Cas Ins Co*, 504 Mich 167, 200; 934 NW2d 674 (2019) (CLEMENT, J., dissenting), Justice Clement explained that "the no-fault scheme aims to assure (insofar as possible) a liable insurer for every victim. To meet that goal, the Legislature required two things: (1) that every owner (or registrant) 'maintain security,' MCL 500.3101(1), and (2) that certain injured persons submit their claims according to a priority scheme." Thus, in order to be eligible for benefits under the no-fault act, Ridenour must have—at a minimum—maintained security and submitted his claim under the priority scheme stated in the no-fault act. Although he maintained security, he cannot show that Progressive is in the order of priority for his claim for PIP benefits.

In order to show that he is an eligible injured person under subsection (2)(b) of the policy, Ridenour would have to prove that Progressive is in the order of priority under MCL 500.3114, among all other requirements of the no-fault act. Ridenour cannot do so because any statutory analysis of priority under MCL 500.3114(4) defaults back to whether the policy definition of "eligible injured person" provides coverage to Ridenour by being the insurer of the owner or operator of the motor vehicle involved. Again, as previously discussed, under the language of the policy, Ridenour is not the named insured and Progressive is not Ridenour's insurer. The policy does not include any language in Part II extending coverage to Ridenour by his status as the owner of a motor vehicle listed on the declarations.

Given the absence of any indication in the policy language that Progressive intended for Ridenour to be an insured for purposes of PIP coverage, Progressive is not Ridenour's insurer for purposes of determining priority for payment of his PIP benefits under MCL 500.3114(4). The trial court properly granted summary disposition in favor of Progressive because Progressive is not the insurer of the owner, registrant, or operator of the vehicle involved in the accident.

Nevertheless, Ridenour argues that the mend-the-hold doctrine precludes Progressive from prevailing on its priority defense because it did not reference that defense in its pre-suit correspondence denying his claim for PIP benefits. We disagree.

In *C E Tackels, Inc v Fantin*, 341 Mich 119, 124; 67 NW2d 71 (1954), our Supreme Court explained the mend-the-hold doctrine—which is sometimes referred to as "waiver and estoppel"—as follows:

> Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law. [Quotation marks and citation omitted.]

-6-

In the insurance context, our Supreme Court has explained that

> it must be accepted as the settled law of this state, that, when a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise the insured of all the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice. [*Smith v Grange Mut Fire Ins Co of Mich*, 234 Mich 119, 122-123; 208 NW 145 (1926).]

Thus, "once an insurance company has denied coverage to an insured and stated its defenses, the company has waived or is estopped from raising new defenses." *South Macomb Disposal Auth v American Ins Co*, 225 Mich App 635, 695; 572 NW2d 686 (1997).

Progressive's stated reason for denying the claim was that there was fraud in the procurement of the policy. Ridenour argues that under the general rule of the mend-the-hold doctrine, Progressive's failure to fully apprise Ridenour of additional defenses that it intended to rely upon was a waiver that estops it from maintaining its priority defense. The application of the mend-the-hold doctrine is limited, however. As this Court explained in *Smit v State Farm Mut Auto Ins Co*, 207 Mich App 674, 680; 525 NW2d 528 (1994):

> [T]he Supreme Court limited the application of waiver and estoppel in *Ruddock v Detroit Life Ins Co*, 209 Mich 638; 177 NW 242 (1920). In that case, the Court explained that the cases applying the "doctrine of waiver and estoppel" had primarily been ones that involved the insurer's assertion that the contract had been forfeited because of noncompliance with conditions of the contract. The Court distinguished those cases and held that waiver and estoppel are not available where their application would result in broadening the coverage of a policy, such that it would "cover a loss it never covered by its terms . . . [and] create a liability contrary to the express provisions of the contract the parties did make." [*Id*. at 654 (second alteration and ellipsis in *Smit*).]

See also *Kirschner v Process Design Assoc, Inc*, 459 Mich 587, 593-594; 592 NW2d 707 (1999) ("The application of waiver and estoppel is limited, and, usually, the doctrines will not be applied to broaden the coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded from the policy."); *South Macomb Disposal Auth*, 225 Mich App at 695 (explaining that the mend-the-hold "doctrine may not be used to broaden policy coverage to protect an insured against risks not included in the policy or expressly excluded from the policy"). Consequently, except under limited circumstances not applicable here,[2] the mend-the-hold doctrine cannot be used to broaden policy coverage to cover risks not included in the

---

[2] See *Lee v Evergreen Regency Co-op & Mgt Sys, Inc*, 151 Mich App 281, 286-287; 390 NW2d 183 (1986) (noting two limited classes of cases in which estoppel can be used "to bring within coverage risks not covered by the policy terms.").

policy. As explained above, Progressive is not in the order of priority to pay no-fault benefits on Ridenour's claim because, under the terms of the no-fault policy, Ridenour is not an individual eligible for benefits, nor is Progressive the insurer of Ridenour, i.e., the owner, registrant, and operator of the motor vehicle involved in the crash. Application of the mend-the-hold doctrine would, therefore, broaden the coverage of the no-fault policy to protect against a risk that was not included in the policy. As a result, the priority defense falls within the exception to the mend-the-hold doctrine and is permissible in this case.[3]

## 2. FRAUD

Ridenour argues that Progressive's fraud defense fails as a matter of law because it is based on inadmissible hearsay and speculative circumstantial evidence. The trial court did not reach this issue because it found it was moot in light of its determination that Ridenour was not entitled to seek PIP benefits from Progressive because Progressive was not in the order of priority for the payment of such benefits. In light of our determination that the trial court did not err by granting summary disposition to Progressive on its priority defense, we agree with the trial court that the issues relating to the fraud defense are moot. See *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014) ("An issue is moot if an event has occurred that renders it impossible for the court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy.") (quotation marks and citation omitted). Accordingly, we do not address Ridenour's arguments related to the fraud defense.

## III. AMENDMENT OF COMPLAINT

## A. STANDARD OF REVIEW

Ridenour contends that the trial court erred by denying his motion to amend his complaint to add a claim for promissory estoppel. This Court reviews a lower court's denial of a motion for leave to amend a complaint for an abuse of discretion. *Sanders v Perfecting Church*, 303 Mich App 1, 9; 840 NW2d 401 (2013).

## B. ANALYSIS

When a trial court grants summary disposition under MCR 2.116(C)(8), (9), or (10), the trial court must give the nonmoving party an opportunity to amend its pleading as provided by MCR 2.118, unless the record demonstrates that amendment of the pleading is not justified. MCR 2.116(I)(5). Leave to amend should be freely granted when justice requires, MCR 2.118(A)(2),

---

[3] Progressive contends on appeal that Ridenour was not prejudiced by its failure to inform him of its intent to rely on a priority defense. The mend-the-hold doctrine, however, may be applicable even in the absence of any prejudice. See *Bartlett Investments, Inc v Certain Underwriters at Lloyd's London*, 319 Mich App 54, 59; 899 NW2d 761 (2017). Whether Ridenour had notice notwithstanding Progressive's failure to mention the defense in its correspondence denying him benefits is, therefore, of no consequence to the application of the doctrine.

and should be denied only for particularized reasons, such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the nonmoving party, or futility. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 208; 920 NW2d 148 (2018).

Promissory estoppel arises from: "(1) a promise (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee and (3) that, in fact, produced reliance or forbearance of that nature (4) in circumstances requiring enforcement of the promise if injustice is to be avoided." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008). "The promise must be definite and clear, and the reliance on it must be reasonable." *Id*.

Relevant to the issue raised on appeal, Ridenour moved to amend his complaint to add a claim that he was entitled to PIP coverage under the doctrine of promissory estoppel because Progressive's "haphazard approach to adding vehicles and individuals to existing insurance policies created a false sense for Plaintiff that he was properly insured and covered by Progressive." He argues in this brief that Progressive simply allowed Layport to add him and his vehicle to the policy through the use of a "phone app that failed to obtain allegedly-material information." Ridenour, however, has not pointed to any evidence in support of his assertion that the "phone 'app' failed to obtain allegedly-material information." Nor does he explain how the failure to obtain such information would relate to any of the elements of promissory estoppel.

Additionally, deposition testimony from one of Progressive's underwriters refutes Ridenour's assertion. The underwriter testified, in relevant part, that the automated system required the insured to answer questions about the vehicles that were going to be added to the policy and the owner(s) of the vehicles. Any person who would be driving the vehicles would be listed as an additional driver on the policy. The underwriter added that the owner of a vehicle can be listed as an additional driver or as a named insured. She testified that "the first question we would ask is are there any additional drivers that need to be added. If they select no, there would be no further questions. Um, if they select yes, there's a box that you can click if you want more information on what that means [to be an additional driver]." The underwriter further testified that "we're gonna ask them for that driver's information. Again, name, date of birth, um, Social Security number, driver's license number, and there will be a question if you want them listed as a second named insured." She stated that additional drivers do not have to fill out anything because "it's not their policy. It's the named insured's policy." She added that additional drivers do not have the right to ask to be a second named insured on the policy or to make changes, nor do they receive a copy of the declarations page or the policy. Instead, such information is provided only to the named insured because additional drivers are not an insured on the policy.

Ridenour does not identify on appeal what alleged promise Progressive made to him. Instead, his deposition testimony indicates that he had no communication with Progressive before the accident. Nor did Ridenour point to any evidence to suggest that Progressive made any promises to him. Instead, on this record, it is clear that Progressive made a promise to Layport, as the named insured to add the Ridenour's vehicle as a covered vehicle and to add Ridenour as an additional driver. There is no dispute that Progressive did, in fact, add the Ridenour's vehicle as a covered vehicle and added Ridenour as an additional driver to the policy. On this record, the trial court correctly concluded that the proposed amendment was futile, and did not abuse its

discretion by denying the motion for leave to amend the complaint to add a claim of promissory estoppel.

Affirmed. Progressive may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Sima G. Patel